[No. D010220. Fourth Dist., Div. One. June 15, 1990.]

DWIGHT E. WILSON, Plaintiff and Appellant, v.
TRI-CITY HOSPITAL DISTRICT, Defendant and Respondent.

## COUNSEL

Larabee & Loadman and Dale R. Larabee for Plaintiff and Appellant.

Coppo & Cosgrove, Martha McGill and Michael G. Roddy for Defendant and Respondent.

## OPINION

BENKE, J.—

### INTRODUCTION

In this case we are called upon to interpret the Supreme Court's recent opinion in *Phillips* v. *Desert Hospital Dist.* (1989) 49 Cal.3d 699 [263 Cal.Rptr. 119, 780 P.2d 349] (*Phillips*). In *Phillips* the court held that a written notice which alerts a public entity to the existence of a claim for monetary damages and an impending lawsuit but fails to comply substantially with the requirements of the claim presentation statute must be treated by the public entity as a defective "claim" which triggers operation of Government Code sections 910.8, 911 and 911.3.[1] Those sections require that a public entity notify a claimant of any insufficiencies of content or timeliness which prevent a claim as presented from satisfying the requirements of the claim statute and provide that failure to give such notice waives any defenses based on such insufficiencies.

Here the plaintiff's prior attorney sent a hospital district's board of directors a letter setting forth the plaintiff's contention he was wrongfully terminated and threatening further action if the matter was not amicably resolved. The hospital responded by retaining counsel of its own, who, in a series of letters to plaintiff's current counsel, advised that the district would not pay plaintiff anything more than he had already received in severance

---

[1] All statutory references are to the Government Code unless otherwise specified.

pay. However, the district never sent the plaintiff any notice under sections 910.8, 911 or 911.3. Under *Phillips* we believe the correspondence between counsel triggered an obligation under sections 910.8, 911 and 911.3. Accordingly, we reverse the judgment entered in favor of the hospital district.

SUMMARY OF FACTS

A. *Termination and Correspondence*

On April 17, 1984, plaintiff and appellant Dwight E. Wilson was terminated from his employment as assistant administrator/director of finance for defendant and respondent Tri-City Hospital District (Tri-City/district).

On May 9, 1984, Attorney David L. McKenzie sent Tri-City's board of directors a letter in which McKenzie stated he was retained to represent Wilson with respect to Wilson's termination.[2] McKenzie advised the board "My initial feeling is that Mr. Wilson's termination was wrongful and a breach of the implied covenant of good faith dealing with permanent employees. [¶]I would invite a meeting between your counsel and I to see if an amicable solution can be arrived at quickly either by way of reinstatement, re-employment, severance pay or whatever. [¶]Please let me hear from you immediately or I will be forced to take further action."

Tri-City retained Attorney Dirk T. Metzger to respond to McKenzie's letter. On May 15, 1984, Metzger sent McKenzie a letter in which he informed McKenzie that Wilson received the salary he was owed at the time of termination, accrued vacation and sick leave and 90 days of severance pay. The last paragraph of Metzger's May 15, 1984, letter stated: "The hospital has violated no contractual obligations, express or implied, between it and Mr. Wilson. Reinstatement or re-employment are not feasible options and, as stated, Mr. Wilson has already received substantial severance pay. We trust the foregoing information supplements your own and provides the answers for any questions you may have."

By July 20, 1984, ·Wilson had retained new counsel, Attorney Dale R. Larabee. On that day Larabee sent Metzger a letter in which he referred to a recent telephone conversation about Wilson's case.[3] In the letter Larabee posed the following questions: "1. What is the Hospital's justification for firing Wilson? [¶]2. If it is incompetence, what is the incompetence? [¶]3. The Hospital Manual also talks about counseling, warning, etc. Is the

---

[2] The letter was on McKenzie's law office stationery; McKenzie's address was printed.

[3] Like McKenzie's letter, Larabee's letter was on law office stationery which included Larabee's address.

Hospital taking the position Wilson was counseled or warned prior to being fired?" At the end of Larabee's July 20 letter, he stated: "Assuming this case has to go on to litigation, I'm concerned about the grievance procedure. Since Wilson was fired by the Hospital Administrator, the grievance seems an unnecessary waste of time. I would like an agreement from someone we may bypass that administrative step and immediately go to court. Don't get me wrong, we're certainly willing to work this out if it can be worked out. It's just something you and I need to talk about if we are unable to do so."

On August 2, 1984, Larabee sent Metzger a second letter which made reference to Larabee's earlier letter and concluded "If your client is not interested in working out a reasonable settlement with Mr. Wilson, I'd suggest you tell me that and we can file the lawsuit forthwith."

Metzger responded on August 6, 1984: "It is unclear from your correspondence what a 'reasonable settlement' entails. As I indicated in correspondence to Mr. Wilson's prior attorney on May 15, 1984, Mr. Wilson has already received substantial severance pay by virtue of his own request and characterization of separation of the hospital and reinstatement or reemployment are not feasible options either for the hospital or your client. [¶]If Mr. Wilson is looking for something besides money, we would, of course, be pleased to discuss the matter further with you. If Mr. Wilson's only interest is in money, then he has been paid." Apparently out of lawyerly caution Metzger closed his letter with the following statement: "This correspondence is intended to constitute prelitigation settlement discussions and is intended to be protected from consideration as evidence at any subsequent proceeding by applicable statutory and case law protections in that regard."

Larabee fired the final salvo in this exchange the next day, August 7, 1984: "I have your letter of August 6th. I am most certainly going to be asking for substantial money on Mr. Wilson's behalf as a 'reasonable settlement.' In light of the language in your letter, I can see the Hospital is not interested in paying any money. [¶]Will the Hospital waive any further discussions between us and administrative actions so I can file a lawsuit on Wilson's behalf? It seems the most logical thing to do. [¶]Finally, will you accept service on behalf of your client?"

B.  *Litigation*

On September 27, 1984, Wilson filed a wrongful termination and breach of covenant complaint against Tri-City. Tri-City answered the complaint on October 22, 1984. Tri-City's answer raised the provisions of sections 900.4, 905 and 911.2 as an affirmative defense.

During the course of the litigation Wilson filed a second amended complaint in which he alleged his counsel's correspondence with the board of directors and Metzger constituted substantial compliance with the provisions of the claims statutes or in the alternative that Tri-City waived or was estopped from asserting the statute. Tri-City filed a demurrer to the second amended complaint on February 22, 1989, on the ground Wilson failed to allege either substantial compliance with the claims statute or facts which gave rise to a waiver of the statute or estoppel to rely on it. The trial court sustained the demurrer without leave to amend and dismissed Wilson's complaint. Wilson filed a timely notice of appeal.

## ISSUES ON APPEAL

Although the opinion in *Phillips* was filed after Wilson's opening brief to this court, we find it dispositive of the issues presented by Wilson. As we explain in greater detail below, under *Phillips,* counsels' correspondence with the board and Metzger triggered Tri-City's duties under sections 910.8, 911 and 911.3. By failing to discharge those duties the district waived any right to rely upon defects in the substance or timeliness of the claim as presented by Wilson.

## DISCUSSION

## I

### *The Phillips Opinion*

Section 911.2 provides: "A claim relating to a cause of action for death or for injury to person or to personal property or growing crops shall be presented as provided in Article 2 (commencing with Section 915) of this chapter not later than six months after the accrual of the cause of action. A claim relating to any other cause of action shall be presented as provided in Article 2 (commencing with Section 915) of this chapter not later than one year after the accrual of the cause of action."[4] Under section 910 a claim must include, among other matters, the name and address of the claimant, the circumstances which gave rise to the claim and the name or names of the public employees who caused the loss or injury. Until 1987 section 910 required that the claimant also state the amount of the claim. In 1987 the Legislature amended section 910 so that a claimant is required to state the amount of the claim only if it is less than $10,000; if the claim exceeds more

---

[4] At the time Wilson's employment was terminated the statute required that personal injury and wrongful death claims be filed with 100 days of accrual of the cause of action. (Compare Stats. 1963, ch. 1715, § 1, p. 3372, and Stats. 1987, ch. 1208, § 3.)

than $10,000, the claimant is only required to state whether jurisdiction over the claim would rest in municipal or superior court. (Stats. 1987, ch. 1208, § 2.) Under section 910.2 the claim must be signed by the claimant or someone acting on the claimant's behalf.

■ The purpose of requiring that a claim be made to a public agency " 'is to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation.' " (*Phillips, supra*, 49 Cal.3d at p. 705.) Consonant with this goal section 910.8 provides in relevant part: "If in the opinion of the board or the person designated by it a claim as presented fails to comply substantially with the requirements of Section 910 and 910.2, . . . the board or such person may, at any time within 20 days after the claim is presented, give written notice of its insufficiency, stating with particularity the defects or omissions therein. . . . The board may not take action on the claim for a period of 15 days after such notice is given."

Section 911 in turn provides: "Any defense as to the sufficiency of the claim based upon a defect or omission in the claim as presented is waived by failure to give notice of insufficiency with respect to such defect or omission as provided in Section 910.8, except that no notice need be given and no waiver shall result when the claim as presented fails to state either an address to which the person presenting the claim desires notices to be sent or an address of the claimant."

In addition section 911.3 provides: "(a) When a claim that is required by Section 911.2 to be presented not later than six months[5] after accrual of the cause of action is presented after such time without the application provided in Section 911.4, the board or other person designated by it may, at any time within 45 days after the claim is presented, give written notice to the person presenting the claim that the claim was not filed timely and that it is being returned without further action. . . . [¶](b) Any defense as to the time limit for presenting a claim described in subdivision (a) is waived by failure to give the notice set forth in subdivision (a) within 45 days after the claim is presented, except that no notice need be given and no waiver shall result when the claim as presented fails to state either an address to which the person presenting the claim desires notices to be sent or an address of the claimant."

In describing this statutory scheme the court in *Phillips* stated: "The Legislature has thus provided a comprehensive scheme which requires a

---

[5] At the time Wilson was terminated the reference in section 911.3 was to claims required to be presented within 100 days. (Stats. 1983, ch. 107, § 1.)

claimant to notify the appropriate public entity of a claim. This notification in turn allows the public entity an opportunity to determine expeditiously the claim's timeliness and sufficiency. If the notice is untimely or lacks any of the information required by sections 910 and 910.2, the public entity may require the claimant to justify the delay or supply the missing data. If the public entity fails to require the claimant to cure such defects, then it waives certain defenses which are otherwise available to challenge a lawsuit based upon the claim. *This possibility of waiver encourages public entities to investigate claims promptly, and to make and notify claimants of their determinations, thus enabling the claimants to perfect their claims.* The overall result is an incentive to public entities to manage and control the claims made against them." (*Phillips, supra,* 49 Cal.3d at p. 706, italics added.)

In *Phillips* the defendant district argued the plaintiffs' notice of intention to bring a malpractice action, required by Code of Civil Procedure section 364, did not trigger the notice and defense-waiver provisions of the claims statute. In rejecting this argument the Supreme Court held "a notice, such as plaintiffs' 364 notice, *which discloses the existence of a claim that if not paid or otherwise resolved will result in litigation,* must be treated as a defective 'claim' activating the notice and defense-waiver provisions of the act, sections 910.8, 911, and 911.3." (*Phillips, supra,* 49 Cal.3d at pp. 707-708, italics added.) Significantly in reaching this conclusion the Supreme Court relied upon and approved an earlier Court of Appeal opinion, *Foster* v. *McFadden* (1973) 30 Cal.App.3d 943, 947 [106 Cal.Rptr. 685] (*McFadden*), and rejected contrary authority in other Court of Appeal opinions. (See, e.g., *Lutz* v. *Tri-City Hospital* (1986) 179 Cal.App.3d 807, 812 [224 Cal.Rptr. 787].)

In *McFadden* the plaintiff was injured when he was struck by a bulldozer operated by an employee of a sanitation district. The plaintiff's attorney sent the driver of the bulldozer a letter which stated the plaintiff's name and the date and place of the accident. The letter asked the driver to forward the letter to his insurer, or if not insured, to contact plaintiff's counsel. The plaintiff's attorney also sent a copy of the letter to the sanitation district. The Court of Appeal found the letter was sufficient to trigger the notice and defense-waiver provisions of sections 910.8 and 911 and reversed a judgment entered in favor of the district. The Court of Appeal reasoned the plaintiff's letter "accomplished the two principal purposes of a sufficient claim. It afforded the district the opportunity to make a prompt investigation of the accident occasioning the letter and it gave to the district the opportunity to settle without suit, if it so desired." (30 Cal.App.3d at p. 949; accord *Phillips, supra,* 49 Cal.3d at p. 710.)

## II

### Wilson's Claim

The district, apparently recognizing the impact the *Phillips* opinion has on the judgment entered in its favor, argues alternatively that this case is distinguishable from *Phillips*, that the district nonetheless substantially complied with the notice provisions of section 910.8, and that in any event we should not apply *Phillips* retroactively. We are not persuaded by the district's arguments.

Relying exclusively on differences between McKenzie's May 6, 1984, letter and the notice of suit letter discussed in *Phillips*, the district argues McKenzie's letter is not an unequivocal demand for payment of money damages which gave the district notice a suit would result if the matter was not resolved. This argument of course is not entirely consistent with the fact that in response to what it now claims was an equivocal letter, the district felt obliged to retain outside counsel. In any event we need not rely solely on the May 6, 1984, letter. Forgotten by the district is Larabee's August 7, 1984, letter which informed Metzger that Larabee would indeed be asking for "substantial money" on Wilson's behalf and inquired as to whether Metzger would accept service. Plainly the August 7 letter met the requirement of *Phillips* and *McFadden*: in the most unequivocal terms it advised the district both that Wilson had a claim for money damages and a lawsuit would result if he was not paid. Under *Phillips* and *McFadden* the August 7 letter triggered the notice and defense-waiver provisions of sections 910.8, 911 and 911.3.

The district's contention it substantially met the notice requirements of section 910.8 is no more convincing than its attempt to distinguish *Phillips*. The district argues that by raising the claims statute as an affirmative defense in the answer it filed on October 22, 1984, it provided "actual" notice his claim was defective. The problem with this argument is that, consistent with the goal of encouraging *prompt* attention to claims, governmental agencies do not have an unlimited period of time in which to give claimants notice of defects. Under section 910.8 the district had only 20 days from the date Wilson's claim was presented in which to give him notice of defects in the form or substance of his claim; under section 911.3 the district was given only 45 days in which to give Wilson notice his claim was not filed within the then existing 100-day limit for death, personal injury and crop damage claims. Because August 7, 1984, was the last and most unequivocal correspondence from Larabee, the affirmative defense raised in the October 22, 1984, answer was already waived by the district's inaction. (§§ 911, 911.3.) Thus at the time the answer was served, actual

notice of any defects was irrelevant: the district no longer had any right to assert them.

Finally we reject the district's suggestion *Phillips* be given only prospective application. ■ In general, judicial decisions are given retroactive effect. (*Newman* v. *Emerson Radio Corp.* (1989) 48 Cal.3d 973, 978 [258 Cal.Rptr. 592, 772 P.2d 1059].) Exceptions to the general rule are rare and usually occur when prospective application is essential to preclude injustice. (*Id.* at pp. 979, 981.) ■ ■ ■ ■ " '[T]he hardship on parties who would be saddled with an unjust precedent if the overruling were not made retroactive, ordinarily outweighs any hardship on those who acted under the old rule or any benefits that might be derived from limiting the new rule to prospective operation.' " (*Id.* at p. 981.)[6] ■ Here application of *Phillips* only requires that the district defend itself on the merits; on the other hand, failure to apply *Phillips* will deprive Wilson of any trial on the merits. Moreover, in light of *McFadden* it is difficult to accept the district's argument that *Phillips* represents such a sharp departure from precedent as to make it in any way unfair to give Wilson the full benefit of *Phillips*.

Since Larabee's August 7, 1984, letter was sufficient to prompt notice under sections 910.8 and 911.3, the district's failure to provide such notice waived its right to any defense based on any defect or tardiness in the claim as presented.

Judgment reversed.

Work, Acting P. J., and Huffman, J., concurred.

---

[6] Indeed, the preference for retroactive application of case law gives rise to a corollary rule, which although unmentioned by the parties, is also pertinent here. After the district's demurrer was sustained without leave, Wilson filed a petition for a writ of mandate (D009775). We denied his petition and in our April 6, 1989, order stated "The petition is denied as there was no compliance with the claims' statute." Ordinarily we would consider our prior order a ruling on the merits which would be binding on Wilson as law of the case. (See *Richer* v. *Superior Court* (1976) 63 Cal.App.3d 748, 756 [134 Cal.Rptr. 52].) However consistent with the preference for retroactivity, the doctrine of law of the case is subject to an exception where the Supreme Court has made an intervening contrary decision. (See *People* v. *Shuey* (1975) 13 Cal.3d 835, 846 [120 Cal.Rptr. 83, 533 P.2d 211]; *Ryan* v. *Mike-Ron Corp.* (1968) 259 Cal.App.2d 91, 97 [66 Cal.Rptr. 224].) The Supreme Court's October 16, 1989, opinion in *Phillips* is plainly contrary to the result we reached in the prior writ proceeding; as an intervening contrary decision of the Supreme Court, we believe it relieves Wilson of the otherwise binding effect of our prior order.