[No. A076797. First Dist., Div. One. June 5, 1998.]

ALLIANCE FINANCIAL et al., Plaintiffs and Appellants, v.
CITY AND COUNTY OF SAN FRANCISCO, Defendant and Respondent.

## COUNSEL

Mitchell & Herzog and Richard R. Herzog for Plaintiffs and Appellants.

Louise H. Renne, City Attorney, Patrick J. Mahoney, Chief Deputy City Attorney, Ellen Forman and Donald P. Margolis, Deputy City Attorneys, for Defendant and Respondent.

## OPINION

**STEIN, J.**—In this opinion we are required to construe the claims presentation provisions of the California Tort Claims Act (Gov. Code, § 900 et seq.) as they apply to an action seeking payment for money due on a contract. We hold that the claims requirements apply to contract actions,

including actions such as this. We also find that if the claimant provides written notification to the public entity that an actionable claim exists and that the failure to resolve it may result in litigation, the public entity may not remain silent and later defend on the grounds that the claimant failed perfectly to comply with the requirements of the act. This is true even if the claimant does not assert unequivocally that litigation is imminent.

## Background

AAA Building Maintenance Contractors (AAA) entered into a contract to furnish janitorial services for the City and County of San Francisco (San Francisco) Department of Recreation and Parks, at what was then known as Candlestick Park. Alliance Financial and Alliance Financial Capital, Inc. (Alliance), a financing agency, purchased a number of AAA invoices representing amounts due for those services, and AAA purportedly assigned to Alliance the right to payment on the invoices.

Alliance forwarded copies of the invoices to the department of recreation and parks. Alliance also sent notice that the right to payment of the invoices had been assigned to it, instructing the department to send any future payments for AAA's services directly to Alliance. When no payment was received, Alliance engaged in a series of telephonic and written communications, insisting on its right to payment for AAA's services. The matter ultimately came to the attention of the city attorney's office. That office sent a letter, dated September 12, 1994, to Alliance, questioning the validity of the invoices, asserting that at least some of them may have been paid, and questioning the validity of their assignment to Alliance. Alliance's attorney responded with a letter to the city attorney's office, dated September 21, 1994, explaining that Alliance had purchased AAA's invoices and been assigned the right to payment of the sums due under them, and that Alliance had notified San Francisco of the assignments and therefore was entitled to payment from San Francisco the amounts due under them. This letter closed: "Thus, from the City's own records, it is clear that the sum of $289,418 and interest at the rate of 10% per annum on those sums is owed to Alliance at the present time. [¶] We look forward to you providing us with [further information relevant to the claim that the invoices have been paid] as promptly as possible so we can avoid the necessity of litigation in this matter." Alliance's attorney wrote another letter, dated May 10, 1995, referring, in part, to records received from San Francisco. Alliance's attorney explained that payment for AAA's services was due on the invoices as of June 1994, and that San Francisco had acknowledged the validity of the invoices. The letter again explained that the right to payment had been

assigned to Alliance and pointed out that San Francisco had been notified of the assignment. The letter referred to nine separate invoices and several notices of assignment, attaching copies of most of the invoices and notices, but also pointing out that San Francisco's own records disclosed that San Francisco had copies of all the relevant documents. The letter summarized the amounts due on the invoices and Alliance's notification to San Francisco of the assignment, and closed: "We look forward to your confirmation of the date and time when these will be paid. I would be happy to meet with the City's representatives prior to filing an action for recovery of those sums."

On October 31, 1995, Alliance filed the present action against San Francisco, seeking payment of the money due on the invoices.[1] San Francisco moved for summary judgment on the grounds that although Alliance had sent invoices and notices to San Francisco, it had not filed a governmental "claim," and thus was barred from filing suit by the claims presentation requirements of the California Tort Claims Act. Alliance opposed the motion, contending, in essence, that the claims presentation statutes do not apply to an action seeking payment of invoices, and that even if the statutes do apply the invoices and other correspondence sent by Alliance and its attorneys satisfied the claims requirements. The trial court agreed with San Francisco, granting its motion for summary judgment and entering judgment that Alliance take nothing by its complaint. Alliance appeals.

### Discussion

Summary judgment is properly granted when "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) In the present case the material facts are undisputed. The questions are whether, as a matter of law, Alliance was required to file a formal claim and whether the invoices and bills submitted by Alliance, or the letters sent by its attorney, are a "claim," or at least a "claim as presented" under the claims presentation provisions of the act. We decide these questions de novo. (*Romero v. American President Lines, Ltd.* (1995) 38 Cal.App.4th 1199, 1203 [45 Cal.Rptr.2d 421].)

---

[1] Alliance's complaint is entitled "Verified Complaint for Fraud; Conversion, Breach of Contract; and Foreclosure of Deed of Trust." The causes of action actually stated, however, are for breach of contract, promissory estoppel, obligation stated by California Uniform Commercial Code sections 9318 and 9502, and common counts. Each cause of action is based on the nonpayment of the invoices.

I.

*The Claims Requirements of the Tort Claims Act as
Applying to Contract Actions*

■ Under the act, with certain exceptions not applicable here, no suit for "money or damages" may be brought against a public entity until a written claim therefor has been presented to the public entity and either has been acted upon or is deemed to have been rejected. (Gov. Code, §§ 905, 945.4.[2]) Authority is split on the question of whether an action on a contract, such as that asserted by Alliance, is an action "for 'money or damages' " within the purview of the claims presentation requirements of the act. (Compare *Loehr* v. *Ventura County Community College Dist.* (1983) 147 Cal.App.3d 1071, 1079 [195 Cal.Rptr. 576] and *Schaefer Dixon Associates* v. *Santa Ana Watershed Project Authority* (1996) 48 Cal.App.4th 524 [55 Cal.Rptr.2d 698] with *Harris* v. *State Personnel Bd.* (1985) 170 Cal.App.3d 639, 643 [216 Cal.Rptr. 274] (overruled on other grounds in *Coleman* v. *Department of Personnel Administration* (1991) 52 Cal.3d 1102, 1123, fn. 8 [278 Cal.Rptr. 346, 805 P.2d 300]) and *National Automobile & Cas. Ins. Co.* v. *Pitchess* (1973) 35 Cal.App.3d 62, 64-65 [110 Cal.Rptr. 649].) We align ourselves with those cases finding that actions on a contract are indeed actions for "money or damages" under the act.

Prior to 1959, Government Code section 29704 provided that parties wishing to institute a suit on any "claim against the county . . . whether founded upon contract, express or implied, or upon any act or omission of the county" first were required to present the claim to the county's governing board of supervisors. In 1959, following a study conducted under the direction of Professor Van Alstyne of the School of Law of the University of California, Los Angeles, the Law Revision Commission determined that because of the large number and variety of claims statutes then existing under California law, ". . . the law of this State governing the presentation of claims against governmental entities is unduly complex, inconsistent, ambiguous and difficult to find, that it is productive of much litigation and

---

[2]Government Code section 905 provides that with certain specified exceptions all claims for money or damages against local public entities must be presented in accordance with the claims presentation statutes.

Government Code section 945.4 provides: "Except as provided in Sections 946.4 and 946.6, no suit for money or damages may be brought against a public entity on a cause of action for which a claim is required to be presented in accordance with Chapter 1 (commencing with Section 900) and Chapter 2 (commencing with Section 910) of Part 3 of this division until a written claim therefor has been presented to the public entity and has been acted upon by the board, or has been deemed to have been rejected by the board, in accordance with Chapters 1 and 2 of Part 3 of this division."

that it often results in the barring of just claims." (Recommendation and Study Relating to the Presentation of Claims Against Public Entities (Jan. 1959) 2 Cal. Law Revision Com. Rep. (1959) p. A-7.) The commission recommended a complete overhaul of the claims statutes. As a result of Professor Van Alstyne's study and the commission's recommendation, the Legislature repealed at least 174 statutes providing separate claims procedures for various local entities, replacing them with a single, uniform law set forth at Government Code former section 700 et seq. (See Recommendation Relating to Sovereign Immunity (Jan. 1963) 4 Cal. Law Revision Com. Rep. (1963) p. 1007.)

One of the problems identified by Professor Van Alstyne was that the various claims statutes were wildly inconsistent as to the type of action they were intended to govern. Professor Van Alstyne noted that Government Code former section 29704, mentioned above, exemplified the broadest form of claims statute. Other statutes were drawn more narrowly, and "have been construed correspondingly. Provisions which require presentation of all claims 'for damages,' for example, do not apply to claims for money due on contract but do embrace breach of contract claims and all types of claims founded in tort whether intentional or negligent . . . . On the other hand, a claims provision which is expressly or impliedly limited to claims for money precludes the necessity of presenting a claim as a prerequisite to injunctive or declaratory relief, but does embrace all forms of monetary demands including pension claims and all types of tort and contract claims." (Recommendation and Study Relating to the Presentation of Claims Against Public Entities (Jan. 1959) 2 Cal. Law Revision Com. Rep. (1959) p. A-82-A-83, fns. omitted.) With the adoption of the uniform law, Government Code former section 29704 was repealed. In place of it and of the various other repealed claims statutes, the Legislature adopted Government Code former section 710, providing that, with certain carefully specified exceptions, "No suit for money or damages may be brought against a local public entity . . . until a written claim therefor has been presented to the entity in conformity with the provisions of this article . . ." and has been rejected in whole or in part. Section 710 was repealed in 1963 and replaced, in part, with Government Code section 945.4. In light of the language of Government Code former section 29704, and of Professor Van Alstyne's comments, there can be no doubt but that the Legislature intended the claims presentation statutes to apply not only to tort claims, but also to claims for breach of contract and claims for money due under a contract. In short, unless specifically excepted, *any* action for money or damages, whether sounding in tort, contract or some other theory, may not be maintained until a claim has been filed with the relevant public entity and either the public entity acts on it or it is deemed to have been denied by operation of law.

## II.

### *The Claims Presentation Requirements*

Under Government Code section 910, a claim must show (1) the name and address of the claimant, (2) the address to which notices are to be sent, (3) the date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted, (4) a general description of the "indebtedness, obligation, injury, damage or loss incurred," (5) the "name or names of the public employee or employees causing the injury, damage, or loss," and (6) "the amount claimed if it totals less than [$10,000]." Government Code section 910.2 provides, in essence, that the claim must be authenticated by the signature of the interested party. Under Government Code section 915 the claim should be presented to the clerk, secretary or auditor of the relevant public entity.[3]

■ A "claim as presented" is a claim that is defective in that it fails to comply substantially with Government Code sections 910 and 910.2, but nonetheless puts the public entity on notice that the claimant is attempting to file a valid claim and that litigation will result if it is not paid or otherwise resolved. A "claim as presented" triggers a duty on the part of the governmental entity to notify the claimant of the defects or omissions in the claim. A failure to notify the claimant of the deficiencies in a "claim as presented" waives any defense as to its sufficiency. (Gov. Code, §§ 910.8, 911[4]; *Phillips* v. *Desert Hospital Dist.* (1989) 49 Cal.3d 699, 705-708 [263 Cal.Rptr. 119, 780 P.2d 349].) A document will be deemed a "claim as presented" "if it discloses the existence of a 'claim' which, if not satisfactorily resolved, will

---

[3]San Francisco's Administrative Code essentially echoes the claims requirements of the California Tort Claims Act, providing in addition that any claim shall be presented to the "City and County (1) by delivering it to the Clerk of the Board of Supervisors or Controller of the City and County, or (2) by mailing the claim to the Clerk of the Board of Supervisors or the Controller of the City and County or to the Board of Supervisors at its principal office." (S.F. Admin. Code, § 10.20-4.)

[4]Government Code section 910.8 provides: "If in the opinion of the board or the person designated by it a claim as presented fails to comply substantially with the requirements of Sections 910 and 910.2, or with the requirements of a form provided under Section 910.4 if a claim is presented pursuant thereto, the board or such person may, at any time within 20 days after the claim is presented, give written notice of its insufficiency, stating with particularity the defects or omissions therein. . . ."

Section 911 provides: "Any defense as to the sufficiency of the claim based upon a defect or omission in the claim as presented is waived by failure to give notice of insufficiency with respect to such defect or omission as provided in Section 910.8, except that no notice need be given and no waiver shall result when the claim as presented fails to state either an address to which the person presenting the claim desires notices to be sent or an address of the claimant."

result in a lawsuit against the entity. [Citation.] A public entity's receipt of written notice that a claim for monetary damages exists and that litigation may ensue places upon the public entity the responsibility, and gives it the opportunity, to notify the potential plaintiff pursuant to sections 910.8 and 911 of the defects that render the document insufficient under sections 910 and 910.2 and thus might hamper investigation and possible settlement of the claim. Such a written notice claiming monetary damages thereby satisfies the purposes of the claims act—to facilitate investigation of disputes and their settlement without trial if appropriate. [Citation.]" (*Phillips* v. *Desert Hospital Dist., supra,* 49 Cal.3d at p. 709.)

■ Two other provisions of the act require mention in light of arguments made by Alliance. Government Code section 930.2 permits the parties to an agreement to alter the claims presentation requirements otherwise imposed by the act. It provides: "The governing body of a local public entity may include in any written agreement to which the entity . . . is a party, provisions governing the presentation . . . of any or all claims arising out of or related to the agreement and the consideration and payment of such claims. . . ." Section 930.2 appears to have been the result of Professor Van Alstyne's recognition that a claim for payment of money due on a contract usually requires less investigation than is required for other forms of claim, and that it may be appropriate to streamline the procedures for such claims. Professor Van Alstyne's comments are instructive. He recommended, as discussed above, that with certain exceptions the claims statutes govern all claims for money or damages. Professor Van Alstyne found that some forms of claim for money or damages should be excepted, however, because by their nature "the basic objectives of early investigation to prevent litigation and discourage false claims . . . are not applicable." (Recommendation and Study Relating to the Presentation of Claims Against Public Entities (Jan. 1959) 2 Cal. Law Revision Com. Rep. (1959) p. A-117.) Although Professor Van Alstyne believed that contract claims should not be excepted, he noted that they "pose a somewhat intermediate problem. Insofar as the claim is one for breach of contract, the need for early investigation and negotiation is frequently as important as in the case of tort claims. Ordinary routine claims for money due on a contract, however, are in a different category and for purposes of administrative convenience should not be shackled with an elaborate formal claims procedure. Other types of non-routine contract claims such as claims for the value of goods or services on an implied contract theory lie somewhere between the first two classes." (*Ibid.*) He therefore "recommended that the new claims statute permit public entities to waive by contract compliance with the claims statutes as to causes of action founded upon express contract other than claims for damages for breach of

contract." (*Ibid.*) The Legislature responded to these comments, adopting Government Code section 705, repealed in 1963, much of which has been incorporated into Government Code section 930.2.

■ The second provision requiring consideration is Government Code section 910.2. That section, as noted above, provides that the claim must be authenticated by a signature. The second sentence of section 910.2, however, contains language that Alliance has seized upon as disclosing a legislative intent to recognize an invoice as a sufficient claim in certain circumstances. Section 910.2 provides, in full: "The claim shall be signed by the claimant or by some person on his behalf. Claims against local public entities for supplies, materials, equipment or services need not be signed by the claimant or on his behalf if presented on a billhead or invoice regularly used in the conduct of the business of the claimant." The exact reason for the second sentence in section 910.2 is unclear. Although a bill or invoice is not itself a claim, and cannot be the subject of a claim until it is unpaid and suit upon it is threatened, there is evidence that interested persons were concerned that governmental entities might apply the claims presentation statutes to bills or invoices and refuse to pay any that were unsigned.[5] There is, however, no evidence that the second sentence was added to make it easier for certain classes of claimants to file governmental claims. While Professor Van Alstyne's comments recognized that a simplified method for presenting claims for money due would be appropriate, no action to relax the claims requirements was taken by the Legislature in light of those comments other than to enact the precursor to Government Code section 930.2. The language that now is the second sentence in section 910.2 was not adopted until two

---

[5]The language that has become the second sentence in section 910.2 was proposed by Senator Albert Rodda as Senate Bill No. 66 (1971 Reg. Sess.). Senator Rodda explained:

"In creating a uniform method of presenting claims against local public entities, Chapter 1724 Statutes of 1959 grouped claims for damages together with claims for supplies, materials, services and equipment.

"The statement on line 15 of the bill, 'The claim shall be signed by the claimant or by some person on his behalf,' is necessary when the claim is for damages, but is actually harmful in application of the section to claims for materials, supplies, services or equipment.

"Counties of the State simply cannot comply with this requirement in processing normal claims for day to day operation without slowing their procedures to a standstill. As an example, conceive of several hundred signed billings per month being required from a Utility for services to the county and its districts.

"The bill, therefore, provides that claims for supplies, materials, equipment or service need not be signed by the claimant if presented on a billhead or invoice regularly used in the conduct of the business of the claimant."

It thus appears that Senator Rodda may have been concerned that public entities would not pay unsigned invoices unless the recommended language was added to the California Tort Claims Act. It does not appear, however, that either Senator Rodda or the Legislature intended generally to relax the requirements for filing claims arising from the failure to pay for goods or services.

years later, in response to the concerns voiced by Senator Rodda. (See fn. 5, *ante*). In all events by its terms, section 910.2 only relaxes the signature requirement for claims for supplies, materials, equipment or services. It does not relax the other requirements for filing claims, and we can find no basis for assuming that by it the Legislature intended to relieve parties wishing to sue on a contract from the necessity of filing a claim separate and apart from an invoice or bill.

## III.

### *The Invoice, Notices and Letters as a Claim or "Claim as Presented"*

The invoices and notices sent by Alliance to the recreation and parks department cannot be deemed a claim or "claim as presented," for purposes of complying with the requirements of the California Tort Claims Act. They stated the sums Alliance claimed were due, and they at least arguably satisfied the signature requirement of Government Code section 910.2. They did not, however, meet many of the other requirements of Government Code section 910, they were sent only to the agency responsible for paying them and, most importantly, they cannot be deemed "claims" in the sense that they could form the basis of a lawsuit. An invoice cannot be the subject of a suit until it is not paid. A party seeking to sue a public entity for an unpaid invoice or bill must communicate, in essence, that a cause of action has accrued because of the nonpayment, and that the failure to resolve the claim may result in litigation. Government Code section 930.3 is of no aid to Alliance. It is true that the terms of the contract between the department of recreation and parks and AAA stated that monthly invoices were to be submitted in quadruplicate to the department. But although Government Code section 930.3 confers power on a local entity to modify the claims procedures contractually, the contract provisions here concerned the submission of invoices, not the filing of a claim.

The September 21 letter sent by Alliance's attorney to the city attorney's office, although not styled as a claim and not meeting the requirements of Government Code section 910, more closely approximates a "claim as presented." It states the existence of a debt, asserts a right to payment, speaks of avoiding litigation, points out that a failure to pay will result in interest and "possible future court costs," and asks for information so that litigation might be avoided.

But there is more. The May 10, 1995, letter, also sent to the city attorney's office, sets forth the substance of Alliance's asserted rights against San

Francisco in detail. In addition, the final sentence, "We look forward to your confirmation of the date and time when these will be paid. I would be happy to meet with the City's representatives prior to filing an action for recovery of those sums," informs San Francisco that the claim is ripe and that litigation can be expected if the matter is not resolved.

San Francisco contends that the May 10 letter does little more than communicate an interest in continuing discussions, and cannot be a claim because it is not an unequivocal expression of intent to sue absent resolution of the dispute. It is true that the expression of intent to sue could have been stronger or more precise. It is not, however, fatal that it is somewhat equivocal, or that the letter indicates a desire to negotiate further prior to filing suit. ■ The purpose of the claims presentation requirements is to provide notice to the public entity that a valid claim may exist and that litigation "*may* ensue" if it is not resolved. (*Phillips* v. *Desert Hospital Dist., supra,* 49 Cal.3d at p. 709, italics added.) The point of the requirements is not to establish a needless formality, but to permit the public entity to avoid litigation by enabling it to conduct an early investigation and consider the benefits of settling a claim. Thus, a communication to the public entity that a claim has accrued and that the claimant intends to enforce it suffices, even though the communication fails to notify the public entity that a lawsuit is imminent.

■ In *Phillips,* the plaintiff's attorney sent a notice, pursuant to Code of Civil Procedure section 364,[6] to a public hospital. The Supreme Court held that although the notice did not comply substantially with the claim presentation requirements of the act, and indeed was not intended by the plaintiff to be a claim, it nonetheless triggered the notice and defense-waiver provisions of the act because it disclosed the existence of a claim and communicated to the hospital that a lawsuit against the district would result if it was not resolved. (49 Cal.3d at pp. 709-710.) The court found it to be irrelevant that the plaintiff was not attempting to file a claim. "Implementation of the purposes of the claim presentation requirements—to require public entities to manage and control claims and to encourage timely investigation and settlement to avoid needless litigation—depends not on a claimant's state of mind but rather on the information imparted to the public entity. Thus, the relevant inquiry is not into plaintiffs' subjective intent but whether their 364 notice disclosed to the hospital that they had a claim

---

[6]Code of Civil Procedure section 364 requires parties intending to file suit against a health care provider for professional negligence to give the defendant at least 90 days' prior notice of the intention to commence the action. (Subd. (a).) No particular form of notice is required, but it must "notify the defendant of the legal basis of the claim and the type of loss sustained, including with specificity the nature of the injuries suffered." (Subd. (b).)

against it which, if not satisfactorily resolved, would result in the filing of a lawsuit." (*Id.* at pp. 709-710.) It is true that, unlike the letter at issue here, the notice in *Phillips* unequivocally stated an intent to sue. The focus of the court in *Phillips,* however, was not on the exact wording of the notice, or on any direct the threat of litigation, but on the notification to the public entity that the claimant was asserting an actionable right to money or damages and that a failure to settle the dispute would lead to court action. The May 10 letter here communicates a basis for a lawsuit and communicates an intent to sue—at some time—if the claim is not resolved. *Phillips* requires no more. Any doubt in this matter is removed by the citation in *Phillips* to the case of *Foster* v. *McFadden* (1973) 30 Cal.App.3d 943 [106 Cal.Rptr. 685] as being directly on point. (*Phillips* v. *Desert Hospital Dist., supra,* 49 Cal.3d at p. 710.) The plaintiff in that case had been injured by a bulldozer driven by John McFadden, an employee of the county sanitation district. The plaintiff's attorney sent a letter to McFadden, in care of the sanitation district, advising him that he had been retained to represent the plaintiff in connection with the accident. The letter recited: " 'Please forward this letter to your insurance carrier and have them contact the undersigned immediately. If you carry no insurance, please call this office at once and advise what disposition you wish to make of this matter.' " (*Foster* v. *McFadden, supra,* 30 Cal.App.3d 945, fn. 2.) The *McFadden* court held that the letter triggered a duty on the part of the district to notify the plaintiff of the defects in his "claim," and the Supreme Court in *Phillips* approved the *McFadden* court's reasoning: "The *McFadden* court . . . [reasoned] that the plaintiff's letter 'accomplished the two principal purposes of a sufficient claim. It afforded the district the opportunity to make a prompt investigation of the accident occasioning the letter and it gave to the district the opportunity to settle without suit, if it so desired.' " (*Phillips* v. *Desert Hospital Dist., supra,* 49 Cal.3d at p. 710.) The letter in *McFadden* did not express an unequivocal intention to file suit should the matter remained unresolved. Indeed, it did not express an intention to sue at all. It did, however, assert the existence of a right to damages and an intention to pursue that right.

Two other cases are instructive. The court in *Wilson* v. *Tri-City Hospital Dist.* (1990) 221 Cal.App.3d 441 [270 Cal.Rptr. 436], followed the *Phillips* analysis in a fact situation somewhat closer to that existing here, finding a "claim as presented" in a letter written to Tri-City's attorney by the plaintiff's attorney reciting: " 'I have your letter of August 6th. I am most certainly going to be asking for substantial money on Mr. Wilson's behalf as a "reasonable settlement." In light of the language in your letter, I can see the Hospital is not interested in paying any money. [¶] Will the Hospital waive any further discussions between us and administrative actions so I can

file a lawsuit on Wilson's behalf? It seems the most logical thing to do. [¶] Finally, will you accept service on behalf of your client?' " (*Id.* at pp. 445, 449.) In *Green* v. *State Center Community College Dist.* (1995) 34 Cal.App.4th 1348 [41 Cal.Rptr.2d 140], the court rejected the argument that a letter from the plaintiff's attorney to the college was a "claim as presented." The letter referred to an accident involving the plaintiff, recited that the attorney's offices had been retained to represent the plaintiff in connection with injuries received by her in the accident and directed the college to send all further correspondence relating to the matter to the attorney. (*Id.* at p. 1351.) The Court of Appeal held: "to be sufficient to constitute a trigger-claim under section 910.8, the content of the correspondence to the recipient entity must at least be of such a nature as to make it readily discernible by the entity that the intended purpose thereof is to convey the assertion of a compensable claim against the entity which, if not otherwise satisfied, will result in litigation. . . . [¶] *Phillips* and *Foster* are factually distinguishable from the instant action in this key respect. In both *Phillips* and *Foster* there was language in the notice letter that indicated that a demand was being made for compensation for injuries due to defendant's negligence and that the failure to satisfy the plaintiff's demand could result in litigation." (*Id.* at p. 1358.) The letter provided by the attorney in *Green*, unlike the notice in *Phillips*, and the letters in *McFadden* and *Wilson,* conveyed no more than the information that the attorney had been retained by the plaintiff. It did not inform the public entity that the attorney had determined that the plaintiff in fact had a compensable claim, it did not convey the information that it had been decided that the attorney would pursue the claim on the plaintiff's behalf, and it provided no notice to the hospital that it could be faced with a lawsuit if the claim was not settled. The May 10 letter at issue here, although arguably less forceful than the notice in *Phillips* or the letter in *Wilson,* does communicate the existence of a compensable claim and the intent to pursue it through the courts if necessary, and communicates those facts more forcefully than did the letter in *McFadden.*

Our conclusion that the letter here was a "claim as presented" appears to be at odds with the decision of the Fourth District in *Schaefer Dixon Associates* v. *Santa Ana Watershed Project Authority, supra,* 48 Cal.App.4th 524. That case involved a contract dispute and money the plaintiff, a contractor, claimed was owed to it by the Santa Ana Water Project Authority (the agency). The contractor sent a number of letters to the agency attempting to establish its right to payment. When the agency approved payment for less than the amount claimed, the contractor's attorneys sent several letters to the agency, referring to the dispute, noting that an amount was still outstanding, and informing the agency that the contractor would file suit if

the matter was not settled. The Fourth District found that none of the attorneys' letters might be deemed a claim. The court found it significant that no letter advised the agency that litigation was imminent, and that neither the contractor nor his attorneys viewed any letter as the equivalent of a claim. "Although these letters did advise the agency of a demand for monetary damages and did threaten litigation if not resolved, each letter demanded a response within fewer than 45 days. Thus, the contractor's attorneys never treated the correspondence as claims requiring a 45-day response under the Tort Claims Act, and did not purport to adhere to the procedures of the act." (*Schaefer Dixon Associates* v. *Santa Ana Watershed Project Authority, supra,* 48 Cal.App.4th at p. 534.) As discussed above, however, the *Phillips* court expressly found it irrelevant that the claimant or attorney did or did not intend the letter or notice to be a claim. What *is* relevant is that the letter or notice put the public entity on notice of the assertion of a compensable claim and that the claimant intends to pursue the matter by means of litigation if necessary. The *Schaefer* court, citing *Dilts* v. *Cantua Elementary School Dist.* (1987) 189 Cal.App.3d 27 [234 Cal.Rptr. 612], also was concerned that where, as there, there is an ongoing correspondence between the claimant and the public entity, the public entity would be required to determine which among the various letters is the true claim or claim as presented. The *Schaefer* court held: "It is entirely unworkable to expect the public entity to discern that this letter, unlike the others, was to be treated as a 'claim,' particularly in view of the fact that the contractor itself never treated any of its letters as if [it] were a claim." (*Schaefer Dixon Associates* v. *Santa Ana Watershed Project Authority, supra,* 48 Cal.App.4th at p. 536.) It is true that on occasion it may be difficult for the public entity to determine the point at which correspondence ceases being an expression of unhappiness or the mere conveyance of information, and becomes the assertion of a compensable claim. It does not, however, follow that a clear assertion of a compensable claim and the intent to pursue it through litigation should not be deemed a "claim as presented." If any letter sent by the claimant or its attorney gives the public entity notice of a compensable claim and an intent to litigate, the entity has received the necessary information. The court in *Phillips* addressed the somewhat analogous concern that "if a letter captioned 'Intention to Commence Action' could activate the notice and defense-waiver provisions of the act, then the hospital and other public health [care] providers would be required to treat all such letters written by dissatisfied patients or their attorneys which threaten legal action as 'claims,' or else risk the loss of defenses from failing to notify the potential claimant of insufficiency or untimeliness pursuant to sections 910.8, 911 and 911.3, subdivision (b)." (*Phillips* v. *Desert Hospital Dist., supra,* 49 Cal.3d at p. 710.) The court's response to that concern was simple. "But, provided the

existence of a claim for monetary damages is definitely disclosed by the document, that burden upon the public entity is precisely the intended effect of the statutory notice and defense-waiver provisions." (*Ibid.*)

In conclusion, we find that although the trial court correctly determined that Alliance's complaint was subject to the act's claims presentation requirements, and that the invoices were not themselves claims, the court erred in finding that Alliance had filed neither a claim nor a "claim as presented" as defined by the court in *Phillips*.

The judgment is reversed.[7] Alliance is awarded its costs on appeal.

Strankman, P. J., and Dossee, J.,* concurred.

---

[7]We take no position on the timeliness of Alliance's claim. Accordingly to Alliance's May 10 letter, the right to payment accrued in June 1994. If Alliance's calculation is correct, the May 10 letter was sent within the one-year time period set forth in Government Code section 911.2 for claims relating to causes of action other than death, injury to person or to personal property or crops.

*Retired Associate Justice of the Court of Appeal, First District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.