[No. F020393. Fifth Dist. May 12, 1995.]

MARILYN HUSTED GREEN, Plaintiff and Appellant, v.
STATE CENTER COMMUNITY COLLEGE DISTRICT, Defendant and
Respondent.

**[Opinion certified for partial publication.\*]**

---

*\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for
publication with the exception of parts II, III and IV.

## COUNSEL

Timothy V. Magill, Tritt & Tritt and James F. Tritt for Plaintiff and Appellant.

Eldridge, Anderson & Weakley, James D. Weakley and Larry H. Shapazian for Defendant and Respondent.

## Opinion

### HARRIS, J.—

#### Introduction

Appellant Marilyn Husted Green filed an action against State Center Community College District (respondent or District) for personal injuries. In this appeal we are confronted with the issue of whether the trial court erred in sustaining without leave to amend respondent's demurrer to appellant's second amended complaint for personal injuries based upon its finding that the complaint, on its face, showed noncompliance with the California Tort Claims Act (Gov. Code, § 900 et seq.; Act).[1] We will conclude that appellant's letter to respondent on March 25, 1992, was not a sufficient "claim" to trigger the notice-waiver provisions of the Act. In the unpublished portion of this opinion we reject appellant's other contentions.

#### Facts and Trial Court Proceedings

On October 7, 1991, appellant Green allegedly was walking across the grass-covered lawn of Fresno City College (College) when she stepped into a hole in the ground that was approximately six to twelve inches in diameter and approximately six inches deep. The hole was covered with grass and not visible to people walking across the lawn. Appellant claimed that she twisted her ankle causing serious injuries.

Appellant alleged that on the day of the injury she, under the direction of the college nurse, Pat Brunetti, caused to be prepared a "Fresno City College" "Report of Accident." Nurse Brunetti provided first aid. On January 31, 1992, appellant was still experiencing continued swelling and pain in her ankle. Nurse Brunetti explained the student insurance policy and procedure and gave appellant a verification and claim form entitled "Student Insurance Claim" for filing an insurance claim. Appellant filed the form.[2]

Exhibit "B" of appellant's second amended complaint is a log of Nurse Brunetti's notes. It states that an appointment was made with Dr. Kenneth

---

[1] All statutory references are to the Government Code unless otherwise noted.

[2] It is unclear from the pleadings whether appellant was provided this insurance free of charge from respondent or whether she paid a premium directly or as part of some student fee.

Kurokawa for February 27, 1992, at 3:45 p.m. Appellant apparently kept this appointment because the health insurance provider submitted a billing statement from Dr. Kurokawa for services provided on February 27, 1992. This bill was attached as exhibit F-5. Appellant alleged that on March 10, 1992, she received correspondence from the Health Special Risk Accident Underwriters "on behalf of" the District indicating that they needed itemized statements from providers in order to commence payment of her medical bills.

On March 25, 1992, appellant's attorney, Timothy Magill, sent a letter to the College stating that he was appellant's counsel. The letter stated:

"Fresno City College
1101 E. University Avenue
Fresno, CA 93741

"RE Our Client : Marilyn Green
 Date of Accident: October 7, 1991

"Gentlemen:

"Please be advised that the MAGILL LAW OFFICES has been retained as attorney for Marilyn Green relative to the personal injuries sustained from that certain accident which occurred on October 7, 1991.

"Accordingly, please direct all further communications and correspondence regarding this accident to this office.

"This is also to advise you that you do not have our authority to discuss this incident with our client without our express written approval.

"Thank you for your continued courtesy and cooperation in this matter.

 "Very truly yours,

 "MAGILL LAW OFFICES

 "/s/ T. V. Magill

 "Timothy V. Magill"

On March 25, 1992, appellant's counsel also sent a separate letter directly to Nurse Pat Brunetti of the College health services advising her that the

Magill Law Offices had been retained as attorney for Marilyn Green. He enclosed an authorization signed by appellant permitting Ms. Brunetti to send him all medical records and reports.

The second amended complaint stated there was never an objection or notice filed by the District or the College "stating the claims were deficient or [that they] failed to contain all necessary information in order to be processed." Appellant claimed that she thereafter relied upon the fact that the College had been served with a proper claim.

Appellant also pled that the District authorized treatment and services by, and made payments through "their accident underwriters" to, medical providers seen by appellant, including the Fresno Surgery Center, St. Agnes Hospital, Dr. Kenneth Kurokawa, Fresno Imaging Center, Star Therapy Clinic and Med-Mart.

Appellant subsequently filed a government tort claim, "Claim Against Public Entities." Although appellant alleged in her second amended complaint that the tort claim was filed "on behalf of the STATE CENTER COMMUNITY COLLEGE," the face of the claim itself shows it was instead served on the State Board of Control on April 6, 1992.[3]

The District attached to its demurrer a copy of correspondence from the State Board of Control of the State of California in Sacramento, dated April 27, 1992, addressed to Mr. McGill, appellant's attorney. The letter stated that it reviewed the claim of Marilyn Husted Green and that her tort claim was rejected because the board had no jurisdiction to accept a claim pertaining to a city college. The letter explained that respondent was not a state government agency, that the State of California had no jurisdiction over city colleges and that the "Board" would take no further action on her claim.

Appellant never sought leave of court to file a late tort claim pursuant to section 946.6. Instead, she apparently took no further action until October 2, 1992, the date she filed her original complaint. By stipulation of the parties, she filed a first amended complaint on February 5, 1993. The District's demurrer to the first amended complaint was heard on March 23, 1993. The trial court sustained the demurrer on the ground that the plaintiff did not comply with the Act and the tolling provisions of Insurance Code section 11583 were inapplicable.

Appellant filed her second amended complaint on April 2, 1993. The District again demurred. The hearing on the demurrer to the second amended

---

[3]Section 911.2 provides that a claimant has six months to file a tort claim with a public entity. The claim sent to the State Board of Control in this action was timely mailed.

complaint was conducted on July 6, 1993. The demurrer was sustained without leave to amend. The trial court found that the second amended complaint failed to state facts sufficient to constitute a cause of action in that it showed on its face that appellant did not comply with the Act and that the tolling provisions of Insurance Code section 11583 were inapplicable.

The trial court ordered that judgment be entered for the District. The trial court's order was prepared as a written order and judgment on the demurrer. Notice of entry of judgment was sent on August 9, 1993. Appellant filed a timely notice of appeal on September 30, 1993.

DISCUSSION

I.

*Sufficiency of Claim to Trigger Notice-waiver*

■ Appellant contends that she notified the College of her pending claim by the March 25, 1992, letter to the College. Appellant acknowledges that the notification did not meet the requirements of the Act, but argues that the waiver provisions of sections 910.8, 911 and 911.3 apply to her case because the College did not notify her of the deficiencies in her claim.

Appellant's second amended complaint alleged, inter alia, the fact and content of the March 25, 1992, letter to the College and that the College never notified her of any deficiency in notice. Based on this lack of notice, appellant contends the College "waived any and all defenses they may otherwise assert to any and all insufficiencies." Appellant argues that her counsel's letter of March 25, 1992, acted as notice of a pending claim triggering a duty by the District to notify her of the deficiencies of her claim and its failure to do so established a waiver of all government tort claim defenses.

Initially, we note that the standard of review from a judgment of dismissal entered after a trial court sustains a demurrer without leave to amend is well settled. In *Phillips* v. *Desert Hospital Dist.* (1989) 49 Cal.3d 699, 702 [263 Cal.Rptr. 119, 780 P.2d 349], the California Supreme Court set forth the standard of review as follows: "This appeal is from a judgment of dismissal entered after the trial court sustained defendant's demurrer. Therefore, under settled law, we assume the truth of all properly pleaded material allegations of the complaint [citations] and give it a reasonable interpretation by reading it as a whole and its parts in their context (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318. . . .)"

█ Under sections 910.8, 911 and 911.3, subdivision (b), the filing of a claim for damages which fails to comply substantially with the Act triggers a duty by the public entity to notify the potential claimant of the claim's insufficiency stating, with particularity, the defects or omissions. If the public entity fails to send this notice, it *waives* any defenses as to the sufficiency of the claim based upon a defect or omission.[4]

The California Supreme Court addressed the notice-waiver provisions of the Act in *Phillips* v. *Desert Hospital Dist.*, *supra*, 49 Cal.3d 699. Writing for a unanimous court, Justice Kaufman initially stated that review was granted in *Phillips* to determine whether a notice of intention to commence an action based on a health care provider's alleged professional negligence pursuant to Civil Code section 364, subdivision (a) could activate the notice and defense-waiver provisions of sections 910.8, 911 and 911.3 of the Act. (49 Cal.3d at p. 701.)

In *Phillips*, the trial court had sustained the demurrer without leave to amend and then dismissed the plaintiffs' amended complaint. The plaintiffs appealed from the order of dismissal and the Court of Appeal affirmed the judgment. The plaintiffs petitioned for review, and the Supreme Court granted review, and then transferred the case to the Court of Appeal for consideration in light of *Foster* v. *McFadden* (1973) 30 Cal.App.3d 943 [106 Cal.Rptr. 685]. The Court of Appeal rendered a second opinion in which it reaffirmed its initial judgment distinguishing the *Phillips* case from the *Foster* case. The Supreme Court granted review and reversed the Court of Appeal. (49 Cal.3d at p. 704.)

The *Phillips* court noted that it is well settled that the purpose of the claims statutes is to provide the public entity with sufficient information to

---

[4]Section 910.8 provides: "If in the opinion of the board or the person designated by it a claim as presented fails to comply substantially with the requirements of Sections 910 and 910.2, or with the requirements of a form provided under Section 910.4 if a claim is presented pursuant thereto, the board or such person may, at any time within 20 days after the claim is presented, give written notice of its insufficiency, stating with particularity the defects or omissions therein. Such notice shall be given in the manner prescribed by Section 915.4. The board may not take action on the claim for a period of 15 days after such notice is given."

Section 911 provides: "Any defense as to the sufficiency of the claim based upon a defect or omission in the claim as presented is waived by failure to give notice of insufficiency with respect to such defect or omission as provided in Section 910.8, except that no notice need be given and no waiver shall result when the claim as presented fails to state either an address to which the person presenting the claim desires notices to be sent or an address of the claimant."

Section 911.3, subdivision (b) provides: "(b) Any defense as to the time limit for presenting a claim described in subdivision (a) is waived by failure to give the notice set forth in subdivision (a) within 45 days after the claim is presented, except that no notice need be given and no waiver shall result when the claim as presented fails to state either an address to which the person presenting the claim desires notices to be sent or an address of the claimant."

enable it to adequately investigate a claim and to settle it without the expense of litigation. (49 Cal.3d at p. 705.) The *Phillips* court then proceeded to analyze the requirements of section 910 and the effect of a defective claim. (*Id.* at pp. 706-708.) The *Phillips* court rejected any distinction the hospital attempted to draw between a notice pursuant to Code of Civil Procedure section 364 and a defective notice giving rise to the defense-waiver provisions of sections 910.8, 911 and 911.3. (49 Cal.3d at pp. 706-708.)

The *Phillips* court concluded that a document constitutes a claim as presented, which triggers sections 910.8, 911 and 911.3, if it discloses the existence of a claim which will result in a lawsuit against the entity if it is not satisfactorily resolved. (See also *Ocean Services Corp.* v. *Ventura Port Dist.* (1993) 15 Cal.App.4th 1762, 1776-1777 [19 Cal.Rptr.2d 750].) The *Phillips* court analyzed the matter as follows:

"We conclude, therefore, that a document constitutes a 'claim as presented' triggering sections 910.8, 911 and 911.3, if it discloses the existence of a 'claim' which, if not satisfactorily resolved, will result in a lawsuit against the entity. (*Tyus* v. *City of Los Angeles* [(1977)] 74 Cal.App.3d [667] at p. 672 [141 Cal.Rptr. 630].) A public entity's receipt of written notice that a claim for monetary damages exists and that litigation may ensue places upon the public entity the responsibility, and gives it the opportunity, to notify the potential plaintiff pursuant to sections 910.8 and 911 of the defects that render the document insufficient under sections 910 and 910.2 and thus might hamper investigation and possible settlement of the claim. Such a written notice claiming monetary damages thereby satisfies the purposes of the claims act—to facilitate investigation of disputes and their settlement without trial if appropriate (74 Cal.App.3d at p. 672).

"The hospital contends that plaintiffs could never have *intended* their 364 notice to function as a claim for purposes of the act because, by plaintiffs' own admission, they were not aware of the hospital's status as a public entity. The hospital fails to explain, however, why or how a claimant's intent, even if ascertainable, is relevant to the notice and defense-waiver provisions of the act. Implementation of the purposes of the claim presentation requirements—to require public entities to manage and control claims and to encourage timely investigation and settlement to avoid needless litigation—depends not on a claimant's state of mind but rather on the information imparted to the public entity. Thus, the relevant inquiry is not into plaintiffs' subjective intent but whether their 364 notice disclosed to the hospital that they had a claim against it which, if not satisfactorily resolved,

would result in their filing a lawsuit. (*Foster* v. *McFadden, supra,* 30 Cal.App.3d at p. 947; *Tyus* v. *City of Los Angeles, supra,* 74 Cal.App.3d at p. 673.) Obviously it did." (49 Cal.3d at pp. 709-710.)

The *Phillips* court noted that the Court of Appeal was unduly concerned over the caption of the plaintiffs' claim under Code of Civil Procedure section 364. In its analysis, the *Phillips* court also concluded that the hospital had failed to notify the plaintiffs of the insufficiencies of their Code of Civil Procedure notice and that the hospital had thus waived any defenses it had because of the insufficiencies. The *Phillips* court addressed these issues as follows:

"The concern of the Court of Appeal below that an improperly captioned document could have an unintended legal effect is likewise misplaced. First, it is settled that the caption or title of a notice does not diminish its legal effect as a claim. [Citations.] More importantly, the notice and defense-waiver provisions (§§ 910.8, 911, 911.3), while falling short of placing an affirmative duty on public entities to obtain the information deemed necessary to investigate incidents and to determine whether settlement is appropriate, nevertheless furnish a strong incentive to do so by sanctioning a public entity that fails to ask the claimant for such information. Thus, if a public entity receives a document that alerts it to the existence of a claim and the possibility of a lawsuit but fails to comply substantially with sections 910 and 910.2, the purposes of the act are best served by requiring the public entity to notify the claimant of the nature of the claim's insufficiencies or lack of timeliness or else waive, by operation of sections 911 and 911.3, its defenses based on those deficiencies.

"Inasmuch as the hospital failed to notify plaintiffs of the insufficiencies in their 364 notice that rendered it defective to comply substantially with sections 910 and 910.2, the hospital has waived any defenses it may have otherwise asserted based on such insufficiencies. (§ 911.) Further, as it failed to notify plaintiffs of any timeliness defects (§ 911.3, subd. (a)), the hospital has similarly waived any defenses it might have raised on the ground of plaintiffs' asserted failure to present a timely claim (§ 911.3, subd. (b)). Accordingly, there is no reason to allow plaintiffs to amend their complaint." (49 Cal.3d at p. 711.)

 We reject appellant's contention that her counsel's letter of March 25, 1992, to the College constituted notice of a claim. Other than the ambiguous fact that this letter was from an attorney, we find nothing in the letter from which we can even infer that a claim was being made on respondent or that litigation would follow if the matter was not resolved.

Clearly, the plaintiffs' Civil Code section 364 notice in *Phillips* was a stronger indication of an intent to file an action than the letter appellant's counsel mailed in the instant case.[5] Not only did the body of the letter in *Phillips* indicate an intent to commence an action, the very reason for the letter was encaptioned *"Intention to Commence Action."*

The *Phillips* case relied substantially on *Foster* v. *McFadden, supra,* 30 Cal.App.3d 943. The *Foster* case was an earlier opinion interpreting the notice-waiver provisions of sections 910.8 and 911. The *Foster* letter provided as follows:

" 'February 29, 1968

"Mr. John McFallon
C/O Sanitation Districts
2020 West Beverly Boulevard
Los Angeles, California

| "Re: Our Client: | Allen Foster |
|---|---|
| Our File No. | 3429 |
| Accident Date: | December 30, 1967 |
| Place: | Mission Canyon-Sepulveda Landfill |

"Dear Mr. McFallon:

"Please be advised that this firm has been retained to represent the interests of the above-named client in connection with the above accident.

---

[5]The Supreme Court in *Phillips* indicated that the plaintiffs' section 364 notice was typed on the law firm's stationery which bore the firm's name, address and telephone number and was signed by their attorney. The letter stated as follows:
" 'Desert Hospital
1150 North Indian Avenue
Palm Springs, California 92262
" 'Re: *Intention to Commence Action*
Paula E. Phillips and Richard A. Phillips
Date of Incident: September 12, 1983
" 'To Whom It May Concern:
" 'This letter will serve to advise you that this office intends to commence an action against Desert Hospital on behalf of Paula E. Phillips and her husband Richard A. Phillips. This action arises out of apparent Health Care Provider Negligence (Medical Malpractice) resulting from the diagnosis, care, treatment, operation and related services rendered to Paula E. Phillips on or about September 12, 1983 at Desert Hospital, Palm Springs, California, and the subsequent complications, treatment, damages and emotional distress resulting therefrom. Mr. Phillips will claim damages for loss of consortium and for his mental and emotional suffering resulting from the damages and disfigurement to his wife.' (Original italics.)" (49 Cal.3d at p. 703.)

"Please forward this letter to your insurance carrier and have them contact the undersigned immediately. If you carry no insurance, please call this office at once and advise what disposition you wish to make of this matter.

"Trusting we may hear from you shortly, and thus eliminate the necessity for initiating formal proceedings and inconvenience to all parties.

"Very truly yours,

"/s/ Donald T. Sterling

"DONALD T. STERLING
"Attorney at Law' "

(*Foster* v. *McFadden*, *supra*, 30 Cal.App.3d at pp. 945-946, fn. 2.)

The *Foster* letter warned the defendant to contact its insurance carrier and "advise what disposition you wish to make of this matter." The *Foster* letter concluded that counsel hoped to hear from the defendant shortly and "thus eliminate the necessity for initiating formal proceedings and inconvenience to all parties."

From *Phillips* and *Foster* we distill the following legal standard to apply in determining whether correspondence is a claim that triggers the notice-waiver provisions of the Act. We hold that to be sufficient to constitute a trigger-claim under section 910.8, the content of the correspondence to the recipient entity must at least be of such nature as to make it readily discernible by the entity that the intended purpose thereof is to convey the assertion of a compensable claim against the entity which, if not otherwise satisfied, will result in litigation. We find that counsel's March 25 letter to respondent does not satisfy this test.

*Phillips* and *Foster* are factually distinguishable from the instant action in this key respect. In both *Phillips* and *Foster* there was language in the notice letter that indicated that a demand was being made for compensation for injuries due to defendant's negligence and that the failure to satisfy the plaintiff's demand could result in litigation. In *Phillips*, the claim letter unequivocally threatened litigation if the matter was not resolved. In *Foster*, the threat of litigation was at the end of the letter as part of a request to "hear from you shortly, and thus *eliminate the necessity for initiating formal proceedings* and inconvenience to all parties." (30 Cal.App.3d at p. 946, fn.

2, italics added.) The underscored phrase, though it is not an outright threat of litigation, strongly implies that litigation will follow if the parties cannot satisfactorily resolve the matter.

Here, to the contrary, there is nothing in counsel's March 25 letter to the College remotely implying that a demand was being made on respondent or that counsel would initiate litigation if appellant's demand was not satisfied. Counsel's letter does not even indicate that an accident occurred on respondent's property.

These deficiencies are fatal to appellant's contention that the March 25 letter constituted a claim. We thus conclude that the letter was not a "claim as presented" and that the notice-waiver provisions of sections 910.8, 911 and 911.3 do not apply to this case. There is nothing in the subject letter that makes it readily discernible that appellant was making a compensable claim against the District or that the failure to satisfy it would result in litigation.

During oral argument on appeal, appellant's counsel argued that even if the March 25 letter to respondent did not provide sufficient notice of a claim, that it at least put respondent on inquiry notice that it should investigate whether the letter was in fact a claim. We reject this proposition as not supported by statute or case authority.[6]

II.-IV.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[6]We also reject appellant's argument that the report of accident, insurance claim, the letter to the nurse with the release form, and the March 25 letter comprise sufficient notice when taken together. Appellant's insurance claim form was not even kept by respondent but sent on to a health insurance provider. There is nothing in the pleadings indicating that respondent was aware of this document, the other March 25 letter sent to the campus nurse, or of the accident report. None of these documents, singularly or in combination, can be construed as a "claim as presented." (See *Wood* v. *Riverside General Hospital* (1994) 25 Cal.App.4th 1113, 1116-1118 [31 Cal.Rptr.2d 8].)

Appellant cited *Ocean Services Corp.* v. *Ventura Port Dist., supra,* 15 Cal.App.4th 1762, for the proposition that multiple letters combined may constitute sufficient notice. We do not read *Ocean Services* as broadly as appellant. It is true that in *Ocean Services* there were many letters of correspondence from the parties throughout 1981. As noted by the *Ocean Services* court, however, the plaintiff there filed an " 'Amendment to Claim and Claim' " that put the parties on notice that a claim was being made. (*Id.* at pp. 1771, 1776.) No such claim was made here, and this case is thus distinguishable from *Ocean Services.*

*See footnote, *ante,* at page 1348.

## DISPOSITION

The judgment is affirmed. Respondent is awarded its costs on appeal.

Ardaiz, P. J., and Vartabedian, J., concurred.

A petition for a rehearing was denied June 9, 1995, and appellant's petition for review by the Supreme Court was denied August 9, 1995. Mosk, J., was of the opinion that the petition should be granted.