Filed 10/27/15  San Diego Unified Port Dist. v. Superior Court CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| SAN DIEGO UNIFIED PORT DISTRICT,<br><br>    Petitioner,<br><br>    v.<br><br>THE SUPERIOR COURT OF SAN DIEGO COUNTY,<br><br>    Respondent;<br><br>FIFTH AVENUE LANDING, LLC,<br><br>    Real Party in Interest. | D067684<br><br>(San Diego County<br> Super. Ct. No. 37-2013-00040725-<br>CU- CO-CTL) |

ORIGINAL PROCEEDING in mandate.  Randa Trapp, Judge.  Petition denied.

Thomas A. Russell, Simon M. Kann; Liedle, Lounsbery, Larson & Lidl, Matthew J. Liedle, Erich J. Lidl and Tami G. Vail for Petitioner.

No appearance for Respondent.

Schwartz Semerdjian Ballard & Cauley, Schwartz Semerdjian Cauley & Moot, Ross J. Schwartz, John S. Moot, Sarah Brite Evans; Higgs, Fletcher & Mack and Victoria E. Fuller for Real Party in Interest.

San Diego Unified Port District (Port District) issued a coastal development permit (CDP) to Fifth Avenue Landing, LLC (FAL), a developer of property along the South Embarcadero San Diego bayfront. The CDP requires FAL to construct a walkway that is an "extension of the Hilton San Diego Convention Center Hotel's promenade . . . ." The Port District also leased FAL property at Fifth Avenue and Marina Park Way. The lease requires FAL to complete construction as defined in the CDP.

A dispute arose between the Port District and FAL about the required width of the walkway. FAL contends the CDP and lease require a 15-foot-wide walkway. The Port District contends the walkway must be 35 feet wide. The difference in cost between the two is about $350,000.

To avoid a possible default under its lease, FAL constructed a 35-foot-walkway under a reservation of rights, and then sued the Port District for breach of the lease.

The Port District moved for summary judgment on four alternative procedural grounds: (1) FAL's exclusive remedy to challenge the CDP was a writ petition under Public Resources Code section 30802; (2) by completing construction, FAL waived its rights; (3) FAL failed to file a government claim; and (4) the Port District is immune for its "discretionary" decisions.

The trial court denied the Port District's motion. The Port District filed a petition for a writ of mandate; this court issued an order to show cause.

We conclude the trial court reached the correct result on the four issues the Port District raised, although on some issues our reasoning differs from the trial court's rationale. To guide further proceedings in the trial court, we also address an issue

2

presented for the first time in the Port District's reply to FAL's return. There, the Port District asserts the CDP, lease, and extrinsic evidence establishes as a matter of law FAL was required to construct a 35-foot-wide walkway.

As we explain, on summary judgment a trial court may properly interpret a written contract as a matter of law, even when conflicting inferences arise, so long as the extrinsic evidence itself is undisputed. However, the Port District did not seek summary judgment on such grounds in the trial court, and we cannot consider the new issue for the first time here. (*Noe v. Superior Court* (2015) 237 Cal.App.4th 316, 335-336.)

FACTUAL AND PROCEDURAL BACKGROUND

The Port District is a government entity established by the Legislature to acquire, construct, and maintain harbor works and improvements, and to promote commerce, navigation, fisheries and recreation of the tidelands and navigable waters of San Diego Bay. The Port District has responsibility for approving land use decisions for the land surrounding San Diego Bay and, as part of this responsibility, the Port District prepared a port master plan. Persons seeking to develop land under the Port District's authority must obtain a CDP.

The Port District also owns land on the bayfront. The dispute in this case concerns one of those parcels, behind the convention center and between the Hilton and Marriott Hotels. FAL leases this land from the Port District.

3

A. *FAL's Water Transportation Center Project*

In 2006 FAL sought to build a water transportation center, hotel, and public park on the leased premises. This development was to occur in phases, with the water transportation center built first and the hotel later.

In 2006 the Port District and FAL amended their lease. This amendment provides improvements must be built in accordance with plans approved by the Port District. It also requires any improvements must be "consistent" with those of the adjacent Hilton Hotel, which was then under construction. The amendment provides FAL shall construct "Phase One improvements," including "a fifteen (15) foot wide concrete walkway contiguous to Convention Way and Marina Park Way . . . ."

FAL submitted plans for the water transportation center, which included a proposed 15-foot-wide walkway. The Port District required FAL to revise the plans, including designing the walkway to be 35 feet wide to be consistent with the Hilton Hotel promenade, which is 35 feet wide, and the Port's Master Plan and Urban Design Guidelines, which also require a minimum 35-foot promenade.

The Port District approved FAL's plans for the water transportation center, subject to certain conditions. These conditions allowed FAL to construct a *temporary* 15-foot asphalt walkway. Another condition specified if FAL did not start constructing the planned hotel within three years, FAL would be required to construct a permanent 35-foot-wide walkway:

> "4. FAL shall construct a temporary 15ft wide asphalt walkway along the waterfront as an extension of the promenade from the

4

Water Transportation Center to Marina Parkway. FAL shall submit improvement plans for District review prior to construction.

"5. In the event that FAL has not started construction of the hotel project within three years by August 7, 2010, FAL must substantially comply with the District's Port Master Plan and the South Embarcadero Urban Design and Signage Guidelines and Amendment. *FAL shall construct the promenade a minimum 35 feet in width per public access easement requirement and Port Master Plan.* The promenade plan shall follow the single uniform design that is consistent with the approved design of the Hilton Hotel development. The promenade shall be extended from the Water Transportation Center to Marina Parkway." (Italics added.)

The temporary asphalt walkway was a concession to FAL. As explained in board meeting minutes, FAL's later construction of the planned hotel would require the walkway to be excavated. Allowing FAL to construct a temporary asphalt walkway, coupled with an obligation to construct a permanent concrete walkway later, would save FAL money. Condition No. 5 unambiguously states, however, that FAL was required to build the permanent 35-foot wide concrete promenade if hotel construction did not start within three years.

B. *The CDP*

The Port District adopted a resolution to issue a coastal development permit to FAL. Consistent with the approved plans and board meeting discussion, the resolution describes the project as including a "15-foot wide waterfront walkway as an extension of the Hilton San Diego Convention Center Hotel's promenade to the remainder of the South Embarcadero." The resolution also requires FAL to "replace the temporary asphalt walkway with a permanent concrete walkway consistent with the approved design of the

5

Hilton San Diego Convention Center [H]otel Development by no later than September 30, 2011 . . . ."

The Port District also sent a letter to FAL stating, "The plans you submitted for approval for the proposed Water Transportation Center and site improvements at Fifth Avenue Landing have been approved subject to the following conditions:

> "4. FAL shall construct a temporary 15ft wide asphalt walkway along the waterfront as an extension of the promenade form the Water Transportation Center to Marina Parkway. . . .

> "5. In the event that FAL has not started construction of the hotel project within three years by August 7, 2010, FAL . . . shall construct the promenade a minimum 35 feet in width per public access easement requirement and Port Master Plan. The promenade plan shall follow the single uniform design that is consistent with the approved design of the Hilton Hotel development."

The Port District issued a CDP for the proposed water transportation center. Page 2 of the CDP provides for a "15-foot wide waterfront walkway as extension of the Hilton San Diego Convention Center Hotel's promenade to remainder of South Embarcadero." Page 7 provides, "Permittee shall replace the temporary asphalt walkway with a permanent concrete walkway consistent with the approved design of the Hilton San Diego Convention Center Hotel development by no later than September 30, 2011. The walkway shall extend from the project site, cross Marina Parkway, and connect to the existing waterfront promenade fronting the Convention Center to create a continuous connection along the bayfront." Exhibit A to the CDP shows a 15-foot-wide walkway connecting to a wider 35-foot-wide walkway at the Hilton Hotel site.

6

C. *The 2010 Lease*

In 2010 FAL sold its lease for the hotel site to the San Diego Convention Center. At about the same time, FAL also entered into a new lease with the Port District (the Lease). Section 5 of the Lease, entitled "Construction of Improvements" provides in part:

> "Lessee shall complete development of the 'Fifth Avenue Landing Water Transportation Center' Project defined in the Coastal Development Permit ('CDP') issued by Lessor to Lessee, dated September 4, 2007 . . . . Should Lessee fail to comply with any requirement of said CDP shall be considered a Default as per Section 10 of this Lease."

The Lease also provides, "No construction, installation, or removal of any improvement upon the Leased Premises shall commence without Lessor's prior written approval. All construction, installations, and removals shall be in accordance with Plans submitted to and approved in writing by Lessor prior to the commencement of any such work."

D. *FAL Submits an Application for a 15-Foot-Wide Walkway*

As required by the Lease, FAL submitted a "Tenant Project Plan Application" to obtain the Port District's approval to construct the walkway, planned to be 15 feet wide. The Port District rejected FAL's application, explaining the CDP, master plan, and urban design guidelines all require a 35-foot-wide walkway:

> "[W]e listened to FAL's rationale for submitting a 15 foot walkway and reviewed the documents handed out from the August 7, 2007 Board Meeting. While we understand there was discussion amongst the Commissioners regarding the material of the walkway, the width was not of issue. It was the Board's intent that FAL complete the promenade connection between the Hilton and Convention Center either as part of the Spinnaker Hotel project or upon a date certain, later determined to be September 30, 2011."

7

FAL disagreed. FAL considered the 35-foot-wide walkway a condition of building its once-planned hotel. Having abandoned its plans to build a hotel, FAL asserted it was not required to build a 35-foot walkway.

E. *Litigation*

FAL's lawyer wrote to the Port District's attorney, stating the Port District had placed FAL in the "untenable position" of either constructing the 35-foot-wide walkway or risking "being in default of the CDP and/or the lease." FAL's attorney stated FAL would "proceed with construction of the walkway as demanded by the Port but reserves all rights relative thereto."

FAL sued the Port District for breach of the implied covenant of good faith and fair dealing and breach of the Lease. FAL alleged the Port District's failure to approve its tenant project plan application "was an unfair interference with FAL's right to receive the benefits of the Lease . . . ." FAL alleged the Port District's failure to approve its tenant project plan application breached section 4 of the Lease, "related to approval of plans and specifications." FAL also alleged the Port District breached a Lease provision requiring mediation as "a precondition to the initiation of any legal action or proceeding."

F. *Motion for Summary Judgment*

The Port District filed a motion for summary judgment or, in the alternative, summary adjudication. Characterizing FAL's action as an attack on the CDP's construction conditions, the Port District asserted summary judgment should be entered on any of the following four procedural grounds:

8

1. "FAL failed to challenge the applicable Coastal Development Permit pursuant to the Public Resources Code . . . ."

2. "[FAL] waived its right to challenge the CDP by completing construction of the disputed improvement."

3. "The District has immunity against FAL's complaint."

4. "FAL failed to comply with notice requirements under the Government Claims Act . . . ."

Opposing the motion, FAL explained it is not challenging the CDP or seeking to have the CDP's conditions invalidated. Rather, FAL asserted its lawsuit challenged the Port District's conduct—*as Lessor*—in disapproving FAL's tenant application to build a 15-foot-wide walkway.

At the hearing, the Port District's attorney acknowledged there was a factual dispute whether FAL was required to build a 15- or 35-foot-wide walkway. However, counsel asserted that factual dispute was not material to the procedural bars raised in the motion:

> "I want to make sure that it's absolutely clear that even though there's a dispute, as you identified, Your Honor, regarding the walkway, and I don't believe or we don't believe that that's a material fact, yes, there is a dispute. But it's not a material fact. [¶] . . . [¶] So the fact that there is this dispute is really not a material dispute. It's just a matter of how they should have proceeded to resolve that dispute. And that's really the point of the motion that we've made. [¶] And how they should have proceeded, Your Honor, is pursuant to the Public Resources Code. . . .[¶] . . . [¶] So the fact that there is a dispute regarding the size of the promenade, Your Honor, is not a material fact preventing this Court from granting the port's motion for summary adjudication based on the fact that they failed to file a writ."

9

The trial court denied the Port District's motion. The court determined FAL was not challenging the CDP, but rather was suing under the Lease. The court found a triable issue whether FAL was required to construct a 15- or a 35-foot-wide walkway. In light of that factual dispute, the trial court stated it could not grant summary judgment on discretionary immunity. Citing Government Code section 66020, the trial court found there was a triable issue whether FAL waived its rights by constructing the 35-foot-wide walkway. The trial court also found there was a "triable issue" whether a series of letters by FAL's attorneys constituted either a claim or a "claim as presented."

G. *Writ Petition*

The Port District's writ petition reiterates the same arguments it made in the trial court. The Port District acknowledges it sought summary judgment "on purely procedural grounds."

DISCUSSION

I. *STANDARD OF REVIEW*

To prevail on a motion for summary judgment, a defendant must show that one or more elements of the plaintiff's cause of action cannot be established or that there is a complete defense to that cause of action. (Code Civ. Proc., § 437c, subd. (p)(2).) Because a motion for summary judgment raises only questions of law, we independently review the parties' supporting and opposing papers and apply the same standard as the trial court to determine whether a triable issue of material fact exists. (*City of San Diego v. U.S. Gypsum Co.* (1994) 30 Cal.App.4th 575, 582.) "This review consists of 'an independent assessment of the correctness of the trial court's ruling, [in which we]

10

apply[] the same legal standard as the trial court in determining whether there are any genuine issues of material fact or whether the moving party is entitled to judgment as a matter of law.' [Citation.] We need not defer to the trial court and are not bound by the reasons in its summary judgment ruling; we review the ruling of the trial court, not its rationale." (*Law Offices of Dixon R. Howell v. Valley* (2005) 129 Cal.App.4th 1076, 1092.)

## II. *THE TRIAL COURT CORRECTLY DETERMINED FAL'S ACTION IS FOR BREACH OF LEASE AND NOT A CHALLENGE TO THE CDP*

Under Public Resources Code section 30802, a writ of administrative mandamus is a landowner's exclusive remedy for challenging the validity of conditions in a coastal development permit. (*City of Berkeley v. 1080 Delaware, LLC* (2015) 234 Cal.App.4th 1144, 1150.) Failing to timely pursue that remedy bars the permit holder's challenge to the validity of the coastal development permit. (*Ibid.*)

FAL contends a writ of mandamus was not its exclusive remedy here because FAL is challenging the Port District's conduct as lessor—not the CDP or the Port District's distinct role as the public entity issuing the CDP.

We agree with FAL that its lawsuit sounds in contract and Public Resources Code section 30802 does not apply. The Lease expressly incorporates the CDP by reference. For example, paragraph 5 of the Lease requires FAL to "complete development" of the project as "defined in the [CDP] issued by Lessor to Lessee." Moreover, the Lease makes any failure to comply with the CDP a "[d]efault" under the Lease  Thus, whatever

11

obligations the CDP imposes on FAL, once the parties entered into the Lease, those obligations also became contractual duties under the Lease.

Under paragraph 4(b) of the Lease, FAL cannot commence construction of "any improvement upon the Leased Premises" without the Port District's "prior written approval" and all such work "shall be in accordance with all applicable laws, regulations, ordinances, and codes." FAL's lawsuit seeks to enforce these contractual obligations by alleging: (1) FAL submitted a tenant project plan application to obtain the Port District's approval, as *lessor*, to construct a 15-foot-wide walkway, as required under paragraph 4(b) of the Lease; and (2) the Port District breached its lease obligations by refusing to approve such construction.

The trial court correctly understood FAL is *not* challenging the validity of the CDP or any of its conditions. The CDP specifies what FAL has to build, but the Lease incorporates those specifications by reference and contains the Port District's obligation as Lessor to allow and approve such construction.

The lessor-lessee relationship between the Port District and FAL distinguishes this case from those cited by the Port District where courts hold a writ of mandamus is the exclusive remedy for challenging a permit condition. (E.g., *City of Berkeley v. 1080 Delaware, LLC, supra,* 234 Cal.App.4th 1144 [challenge to validity of permit condition restricting residential housing]; *Pfeiffer v. City of La Mesa* (1977) 69 Cal.App.3d 74 [challenge to validity of permit condition requiring granting of an easement and storm drain], modified by statute as stated in *Sterling Park, L.P. v. City of Palo Alto* (2013) 57 Cal.4th 1193, 1200; *Patrick Media Group, Inc. v. California Coastal Com.* (1992) 9

Cal.App.4th 592 [challenge to validity of permit condition requiring off-site advertising signs to be removed]; *City of Santee v. Superior Court* (1991) 228 Cal.App.3d 713 [challenge to conditions on building permit].)

Even if FAL did waive or forfeit any challenge to the CDP by not filing a mandamus petition, FAL could still prevail on its breach of contract theory if the CDP, properly interpreted, only requires a 15-foot-wide walkway. Thus, FAL is suing under the lease, and not to invalidate the CDP, and therefore the exclusive remedy provision in Public Resources Code section 30802 does not apply.

### III. *NO MANDAMUS, NO IMMUNITY, NO WAIVER*

Having determined FAL's lawsuit is what it claims to be—an action for breach of contract—three of the four issues in the Port District's motion are easily resolved.

#### A. *No Exclusive Remedy Under Public Resources Code Section 30802*

The trial court correctly determined the exclusive remedy (writ of mandate) specified in Public Resources Code section 30802 does not apply here because FAL is not seeking judicial review of the validity of the CDP's conditions.

#### B. *No Immunity*

The trial court also correctly determined the immunity issue, although we reach that result for other reasons. The trial court stated, "Because there is a triable issue as to what width of walkway was required, the court cannot determine at this point whether defendant's refusal to approve a 15 foot walkway and require a 35 foot walkway was an exercise of discretion entitling it to immunity." However, having already determined FAL's action is one for breach of contract, a more direct answer is governmental

13

immunity does not protect public entities from breach of contract. (Gov. Code, § 814; *Universal By-Products, Inc. v. City of Modesto* (1974) 43 Cal.App.3d 145, 153.)

C. *No Waiver*

Generally, if a property owner complies with an allegedly unreasonable or invalid permit condition, the owner waives his or her right to challenge it. (*Hensler v. City of Glendale* (1994) 8 Cal.4th 1, 19, fn. 9; *Pfeiffer v. City of La Mesa, supra,* 69 Cal.App.3d at p. 78.) Government Code section 66020 contains an exception to this waiver rule, allowing a developer to comply with a condition under protest and proceed with development while simultaneously challenging the condition. But this exception applies only to conditions imposed by local agencies that "divest the developer of money or a possessory interest in property." (*Sterling Park, L.P. v. City of Palo Alto*, *supra*, 57 Cal.4th at p. 1207.) It does not apply to conditions imposed by agencies or conditions that restrict "the manner in which a developer may use its property." (*Ibid.*) A second exception applies when an agency imposes new conditions on a permit for a later phase of a project already underway. (*McLain Western #1 v. County of San Diego* (1983) 146 Cal.App.3d 772, 777.)

The trial court rejected the Port District's waiver arguments. Citing Government Code section 66020, the trial court determined there was a "triable issue" whether constructing a 35-foot-wide walkway waived FAL's rights.

The trial court reached the correct result, although our reasoning differs. Having determined this is a breach of contract case, the relevant standard for determining waiver is found in the Lease itself.

14

Paragraph 31 of the Lease is entitled, "Waiver." It provides in part: "[F]ailure on the part of either party to require or exact the other's full and complete compliance with any of the Lease covenants, conditions, or agreements shall not be, nor be construed as in any manner changing the terms, or preventing the enforcement in full, of the provisions hereof." Under this provision, FAL's failure to require the Port District's "full and complete compliance" with what FAL construed to be its obligation to construct a 15-foot-wide walkway "shall not be, nor be construed as" any waiver.

IV. *CLAIMS ACT COMPLIANCE*

Government Code section 900 et seq.,[1] the government Claims Act, establishes certain conditions precedent to the filing of a lawsuit against a public entity. The Claims Act applies to tort and contract actions. (*City of Stockton v. Superior Court* (2007) 42 Cal.4th 730.) Failing to timely present a proper claim for money or damages is fatal to a plaintiff's lawsuit against a public entity. (*DiCampli–Mintz v. County of Santa Clara* (2012) 55 Cal.4th 983, 990.)

A. *Requirements for a Valid Claim*

A claim is a notice that complies with sections 910 and 910.2. (*Phillips v. Desert Hospital Dist.* (1989) 49 Cal.3d 699, 707.) Section 910 requires a claim to set forth all of the following: (1) "[t]he name and post office address of the claimant"; (2) "[t]he post office address to which the person presenting the claim desires notices to be sent"; (3)

---

[1] Hereafter, all statutory references are to the Government Code. When referring to statutory subparts in that code, the word "subdivision" is omitted.

15

"[t]he date, place and other circumstances of the occurrence or transaction which gives rise to the claim asserted"; (4) "[a] general description of the indebtedness, obligation, injury, damage or loss incurred so far as it may be known at the time of presentation of the claim"; (5) "[t]he name or names of the public employee or employees causing the injury, damage, or loss, if known"; and (6) "[t]he amount claimed if it totals less than [$10,000] as of the date of presentation of the claim, including the estimated amount of any prospective injury, damage, or loss, insofar as it may be known at the time of the presentation of the claim, together with the basis of computation of the amount claimed. If the amount claimed exceeds [$10,000], no dollar amount shall be included in the claim. However, [the claimant must] indicate whether the claim would be a limited civil case." The claimant or some person on the claimant's behalf must sign the claim. (§ 910.2.)

The purpose of requiring a plaintiff to submit a pre-lawsuit claim to the public entity is not to prevent surprise, but to give "the entity an opportunity to promptly remedy the condition giving rise to the injury, thus minimizing the risk of similar harm to others"; permit "the public entity to investigate while tangible evidence is still available, memories are fresh, and witnesses can be located"; and permit "early assessment by the public entity, allow[ing] its governing board to settle meritorious disputes without incurring the added cost of litigation, and giv[ing] it time to engage in appropriate budgetary planning." (*Shirk v. Vista Unified School Dist.* (2007) 42 Cal.4th 201, 213.)

"Where a claimant has attempted to comply with the claim requirements but the claim is deficient in some way, the doctrine of substantial compliance may validate the claim 'if it substantially complies with all of the statutory requirements . . . even though it

16

is technically deficient in one or more particulars.'" (*Connelly v. County of Fresno* (2006) 146 Cal.App.4th 29, 38.) Substantial compliance is at least some compliance with each of the statutory requirements. (*Del Real v. City of Riverside* (2002) 95 Cal.App.4th 761, 769.) However, "[t]he doctrine of substantial compliance . . . 'cannot cure [a] total omission of an essential element from the claim or remedy a plaintiff's failure to comply meaningfully with the statute.'" (*Connelly,* at p. 38.)

B. *Requirements for a Claim as Presented*

A "claim as presented" is a claim that is defective in that it fails to comply substantially with sections 910 and 910.2, but nonetheless puts the public entity on notice the claimant is attempting to file a valid claim and litigation will result if it is not resolved. (*Alliance Financial v. City and County of San Francisco* (1998) 64 Cal.App.4th 635, 643.) "[A] document constitutes a 'claim as presented' . . . if it discloses the existence of a' claim' which, if not satisfactorily resolved, will result in a lawsuit against the entity." (*Phillips v. Desert Hospital Dist*., *supra,* 49 Cal.3d at p. 709.)

A claim as presented triggers a duty on the part of the governmental entity to notify the claimant of defects in the claim. A failure to notify the claimant of deficiencies waives any defense as to its sufficiency. (*Phillips v. Desert Hospital Dist., supra,* 49 Cal.3d at p. 709*; §§* 910.8, 911.)

C. *FAL's Lawyer's Letter Is a Claim as Presented*

The trial court determined three letters by FAL and/or its attorneys constituted either a claim or a claim as presented. We agree the trial court correctly denied summary judgment on this ground, although our reasoning differs. Claims compliance cannot be

based on piecing together a series of letters. *Dilts v. Cantua Elementary School Dist.* (1987) 189 Cal.App.3d 27 and *Schaefer Dixon Associates v. Santa Ana Watershed Project Authority* (1996) 48 Cal.App.4th 524 hold that substantial compliance with the Claims Act requires a single document. A claim cannot be cobbled together from multiple letters:

> "If a series of letters received over a period of time could collectively constitute a claim, it would be impossible to ascertain whether a claim had been presented within the 100 days or one-year time limitation as specified in section 911.2. The act provides that if a claimant files a timely claim, the public entity has 45 days within which to grant or deny the claim. (§ 911.6.) If the claim is denied by way of written notice, the claimant has six months within which to file a court action. (§ 913.) If the claim is not acted upon by the public agency within 45 days, it is deemed denied by operation of law and the claimant has 2 years within which to file a court action. (§ 945.6.) It would be difficult for the public entity to identify whether a particular letter were a claim and which letter triggered its obligation to accept or deny a claim if a series of correspondence could be considered collectively to constitute a claim. If an agency was unable to determine whether a claim had been filed or when the claim had been filed, it would be equally difficult for the court to determine which statute of limitation applied or when the statute of limitation began to run.

> "The procedures prescribed by the Tort Claims Act envisioned the filing of a single claim with the public entity so that the public entity may investigate the claim, consider settlement and formally approve or reject a claim. The letters sent to the district on behalf of Dilts by his attorney do not constitute a claim within the meaning of the Tort Claims Act, and the doctrine of substantial compliance cannot be applied." (*Dilts, supra*, 189 Cal.App.3d at pp. 35-36.)

18

Apparently recognizing this rule, FAL focused the trial court exclusively on the June 6, 2011 letter its lawyer sent to the Port District's attorney.[2] That letter states in part:

> "At this point in time, the Port has put Fifth Avenue Landing, LLC in an untenable position. The Port has made it clear that it will not approve the plans FAL submitted for a 15-foot walkway and FAL is now in a position where it needs to proceed with the construction of a 35-foot walkway or be at risk of being in default of the CDP and/or the lease. [¶] With the foregoing in mind and subject to the Port's approval of FAL's plans for the 35-foot walkway and FAL's receipt of an Entry Permit from the San Diego Convention Center, this is formal notice to the Port that FAL will proceed with construction of the walkway as demanded by the Port but reserves all rights relative thereto. [¶] If the Port remains unwilling to mediate this matter, FAL has instructed me to file action in court for declaratory relief and damages. If the Port is willing to pursue mediation, then I need to hear back from you before June 16. *Otherwise, action will be filed without further notice*." (Italics added.)

To constitute a claim, the June 6, 2011 letter must substantially comply with all of the statutory requirements. Substantial compliance is at least some compliance with each of the statutory requirements. (*Del Real v. City of Riverside, supra,* 95 Cal.App.4th at p. 769.) "The doctrine of substantial compliance, however, 'cannot cure total omission of an essential element from the claim . . . .'" (*Connelly v. County of Fresno, supra,* 146 Cal.App.4th at p. 38.)

The June 6, 2011 letter from FAL's lawyer is not a government claim because it does not state: (1) the name and post office address of the claimant; (2) the date, place and other circumstances of the occurrence or transaction which gives rise to the claim

---

[2] FAL's return filed in this court erroneously asserts its "series of letters" constitute the requisite claim.

asserted; (3) the name or names of the public employee or employees causing the injury, damage, or loss, if known; and (4) whether the claim would be a limited civil case. Where, as here, the claim does not provide each of the categories of information required by section 910, "there is an entire failure on the part of the plaintiff to comply with one of the mandates of the statute.  Substantial compliance cannot be predicated on no compliance."  (*Hall v. Los Angeles* (1941) 19 Cal.2d 198, 202.)

Accordingly, the trial court was incorrect in stating there was a "triable issue" that FAL submitted a valid claim.  Nevertheless, the ruling denying summary judgment was correct because as the trial court stated in the alternative, FAL's letter is a "claim as presented."

In *Green v. State Center Community College Dist.* (1995) 34 Cal.App.4th 1348, the appellate court outlined the "legal standard to apply in determining whether correspondence" is a claim as presented:

> "[T]o be sufficient to constitute a trigger-claim under section 910.8, the content of the correspondence to the recipient entity must at least be of such nature as to make it readily discernible by the entity that the intended purpose thereof is to convey the assertion of a compensable claim against the entity which, if not otherwise satisfied, will result in litigation."  (*Id.* at p. 1358.)

For example, in *Phillips v. Desert Hospital Dist.*, *supra*, 49 Cal.3d 699, an attorney's letter stated, "This letter will serve to advise you that this office intends to commence an action against Desert Hospital" and stated the date of the alleged medical negligence.  (*Id.* at p. 703.)  The Court held this letter was a claim as presented because it disclosed the plaintiffs had a claim which, if not satisfactorily resolved, would result in

20

their filing a lawsuit.  (*Id.* at p. 710.)  In contrast, in *Green v. State Center Community College Dist.*, *supra*, 34 Cal.App.4th 1348, the letter referred to an accident involving the plaintiff, recited the attorney had been retained to represent the plaintiff, and directed the putative defendant to send all further correspondence relating to the matter to the attorney.  The Court of Appeal in *Green* held this did not constitute a claim as presented because "there is nothing in counsel's  . . . letter to the College remotely implying that a demand was being made  . . . or that counsel would initiate litigation if appellant's demand was not satisfied."  (*Id.* at p. 1359.)

Here, FAL's attorney's June 6, 2011 letter is a claim as presented because it put the Port District on notice of FAL's assertion of a compensable claim for the cost of constructing a 35-foot-wide walkway and that FAL intended to pursue the matter by litigation if necessary.  ("If the Port is willing to pursue mediation, then I need to hear back from you before June 16.  Otherwise, action will be filed without further notice.")

FAL's claim as presented triggered the Port District's obligation to notify FAL of defects or omissions in the claim.  A failure to do so waives any defense as to its sufficiency.  (*Alliance Financial v. City and County of San Francisco*, *supra*, 64 Cal.App.4th at p. 643.)  Here, it is undisputed that the Port District did not notify FAL of any such defects or omissions.  Therefore, the trial court correctly rejected the Port District's contention that FAL's action was barred for Claims Act noncompliance.

## V.  *CONTRACT INTERPRETATION ISSUES*

The Lease requires FAL to complete development as "defined in the Coastal Development Permit."  With respect to the walkway width, the CDP itself is ambiguous

21

and seemingly contradictory. It first specifies a "15-foot wide waterfront walkway," but also requires FAL to "adhere strictly to the current plans for the project as approved by the District" and to build a "permanent concrete walkway consistent with the approved design of the Hilton San Diego Convention Center Hotel." Both of these requirements dictate a 35-foot walkway. The Lease, which incorporates the CDP by reference, necessarily contains the same ambiguity.

In the trial court, the parties and the court seem to have been operating under the assumption that when language in a written instrument is ambiguous and reasonably susceptible to two different interpretations, that conflict necessarily raises a triable issue that cannot be resolved on summary judgment.

However, taking a distinctly different approach in its reply brief filed here, the Port District contends "no genuine issue of material fact exists that the permanent concrete walkway was to be 35 feet wide." The Port District asserts, "There is no evidence the 35-foot promenade requirement was ever 'contingent' on the construction of a hotel." The Port District states that based on all the evidence, "FAL cannot show that a triable issue existed concerning the CDP's 35-foot wide requirement."

We asked the parties to address this issue in supplemental letter briefs. Both sides agree on the legal standard: The appellate court may consider a newly-raised issue when it "involves purely a legal question which rests on an uncontroverted record which could not have been altered by the presentation of additional evidence." (*In re Marriage of Broderick* (1989) 209 Cal.App.3d 489, 501.) However, "[e]ven under such circumstances, we will not consider the issue unless 'the opposing party has notice of and

22

an opportunity to respond to that ground.'" (*Noe v. Superior Court* (2015) 237 Cal.App.4th 316, 335-336.)

In its supplemental brief, the Port District contends this Court should determine as a matter of law that FAL was required to construct a 35-foot-wide walkway because "FAL also fully put forth all its facts on this width issue" in the trial court. The Port District asserts "FAL had notice of the supposed width issue" because FAL addressed the issue in its "opposition and attempted to show a contested issue of fact." The Port District concludes, "Even though summary judgment was sought by the Port District on procedural grounds, the factual issue regarding the width requirement of the walkway was raised below in the opposition to the motion for summary judgment filed by FAL." (Italics omitted.)

In sharp contrast, FAL contends the factual record would be significantly different if the Port District had sought summary judgment on the merits. FAL's supplemental brief states, "Had the Port District adequately raised the issue of whether, as a matter of law, the permit required a width of 15 or 35 feet in the trial court, Fifth Avenue would have submitted additional evidence that is critical to its position." Akin to an offer of proof, FAL's supplemental brief asserts that certain testimony and documentary evidence would have been submitted in the trial court if the Port District had sought summary judgment on the merits. Appellate counsel for FAL represents such evidence includes "evidence that the Port District itself requested the width of 15 feet for the walkway . . . ."

We decline the Port District's invitation to direct entry of summary judgment on the merits. The Port District's notice of motion did not seek summary judgment on this

23

ground. Moreover, FAL had no notice of this merits issue where it counted—in the trial court—where FAL represents it could have responded with evidence to meet it. Given FAL's offer of proof in its supplemental brief, obvious considerations of fairness prevent this Court from deciding a *dispositive motion* on an issue raised for the first time in a reply brief filed in the appellate court. (*SCI California Funeral Services, Inc. v. Five Bridges Foundation* (2012) 203 Cal.App.4th 549, 573, fn. 18.)

Nevertheless, because this issue may arise again, and to guide the parties and the trial court in further proceedings, we note that interpretation of a written contract is a question of law for the court unless that interpretation depends upon resolving a conflict in properly admitted extrinsic evidence. (*City of Hope National Medical Center v. Genetech, Inc.* (2008) 43 Cal.4th 375, 395.) Extrinsic evidence includes "objective matters as the surrounding circumstances under which the parties negotiated or entered into the contract; the object, nature and subject matter of the contract; and the subsequent conduct of the parties." (*Morey v. Vannucci* (1998) 64 Cal.App.4th 904, 912.)

When the extrinsic evidence itself is uncontradicted—that is, when the evidentiary *facts* themselves are not in conflict, but the parties only disagree about the *inferences* to be drawn from those undisputed facts—interpretation of the agreement is a question of law for the court, suitable for resolution on summary judgment. (*Wolf v. Walt Disney Pictures & Television* (2008) 162 Cal.App.4th 1107, 1126-1127 ["When there is no material conflict in the extrinsic evidence, the trial court interprets the contract as a matter of law."]; *Scheenstra v. California Dairies, Inc.* (2013) 213 Cal.App.4th 370, 390 ["Even where uncontroverted evidence allows for conflicting inferences to be drawn, our

24

Supreme Court treats the interpretation of the written contract as solely a judicial function."]; *Sprinkles v. Associated Indemnity Corp.* (2010) 188 Cal.App.4th 69, 76 ["When the facts are undisputed . . . the interpretation of a contract, including the resolution of any ambiguity, is a question of law."]; *Medical Operations Management, Inc. v. National Health Laboratories* (1986) 176 Cal.App.3d 886, 892 [interpretation is a question of law for the court because "although the parties hotly dispute the inferences to be drawn from this extrinsic evidence, the evidentiary facts themselves are not in conflict"].)

This means that if the historical facts are undisputed but give rise to conflicting inferences, the question of what inferences to draw from the facts for purposes of contract interpretation is a question of law for the trial court to decide. (*City of El Cajon v. El Cajon Police Officers' Assn.* (1996) 49 Cal.App.4th 64, 71.)

*On this record*, there is no material conflict in the relevant extrinsic evidence. The historical facts are undisputed. The parties dispute only the inferences to be drawn from those undisputed facts. Some of these undisputed material facts, summarized below, are compelling evidence that the Lease requires FAL to construct a 35-foot-wide walkway:

> In June 2006 the Port District reviewed the water transportation center plans and required a 35-foot-wide walkway in accordance with "the single uniform design of the Hilton Plan."

> In December 2006 the Port District delivered Hilton Hotel plans to FAL.

> In July 2007 the Port District conditionally approved plans for the water transportation center. Condition 4 stated, "FAL shall construct a temporary 15ft wide asphalt walkway . . . ." Condition 5, printed immediately below condition 4 states, "In the event that FAL has not

25

started construction of the hotel project within three years by August 7, 2010, FAL . . . shall construct the promenade a minimum 35 feet in width . . . . The promenade shall follow the single uniform design that is consistent with the approved design of the Hilton Hotel development."

An August 2007 resolution by the Port District states FAL "shall replace the temporary asphalt walkway with a permanent concrete walkway consistent with the approved design of the Hilton San Diego Convention Center hotel development no later than September 30, 2011 . . . ."

In August 2007 the Port District sent FAL correspondence to confirm the conditions of approval concerning the proposed water transportation center, stating in part, "FAL shall construct a temporary 15ft wide asphalt walkway . . . . In the event that [] FAL has not started construction of the hotel project within three years by August 7, 2010, FAL . . . shall construct the Promenade a minimum 35 feet in width per public access easement requirement and Port Master Plan."

Interpreting the Lease in light of these historical facts, and any other undisputed extrinsic evidence properly received into evidence, is a judicial function. So long as the issue remains one of resolving an ambiguity based on undisputed extrinsic evidence, the trial court should decide the issue as a matter of law. The parties may hotly dispute the inferences to be drawn from undisputed historical facts, but that does not change the issue of contract interpretation into a question of fact for a jury. (*Medical Operations Management, Inc. v. National Health Laboratories*, *supra*, 176 Cal.App.3d at p. 892.)

DISPOSITION

The petition is denied. Each party to bear its own costs.

To avoid any misunderstanding of the law of the case effect of this opinion: None of these proceedings, whether in the trial court or in this Court, preclude the Port District

26

from bringing a motion for summary judgment or some other dispositive motion in the trial court to address whether the Lease requires the subject walkway to be 15 or 35 feet wide. We express no opinion on the resolution of such a motion if it were based on a factual record different from the one presented here.

NARES, Acting P. J.

WE CONCUR:

McDONALD, J.

McINTYRE, J.

27